**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X

DAVID ABERNETHY, FRED BLICKMAN, PAUL :
BLUESTEIN,  ROBERT BRANCHINI, DOMINIC :
D'ADAMO, MARILYN DEQUATRO, THOMAS :     Civil Action No.
DWYER, MICHAEL FULLWOOD, PHILIP :
GANDOLFO, JAMES GREENIDGE, MICHAEL :
HERBERT, STEVEN KESSLER, DENNIS LIOTTA, : **CLASS AND**
DANIEL MCGOWAN, RONALD PLATT, ARAN :    **COLLECTIVE ACTION**
RON, JOAN RUBY, ARAKSI SARAFIAN, :       **COMPLAINT**
VINCENT SCICCHITANO, JOHN STEBER, :
LESLIE STRASSBERG, PEDRO VILLALBA, :
ANTHONY WATSON and MARC WOLFERT, on :    **Jury Trial Demanded**
behalf of themselves and all other similarly-situated :
individuals, :
                                        :
                        Plaintiffs, :
                                        :
            v.                          :
                                        :
EMBLEMHEALTH, INC., EMBLEMHEALTH :
SERVICES COMPANY, LLC and :
CONNECTICARE, INC., :
                                        :
                        Defendants. :
------------------------------------------------------------------ X

Plaintiffs David Abernethy, Fred Blickman, Paul Bluestein,  Robert Branchini, Dominic

D'Adamo, Marilyn DeQuatro, Thomas Dwyer, Michael Fullwood, Philip Gandolfo, James

Greenidge, Michael Herbert, Steven Kessler, Dennis Liotta, Daniel McGowan, Ronald Platt,

Aran Ron, Joan Ruby, Araksi Sarafian, Vincent Scicchitano, John Steber, Leslie Strassberg,

Pedro Villalba, Anthony Watson and Marc Wolfert ("Plaintiffs"), on behalf of themselves and all

other similarly-situated individuals, by and through undersigned counsel, Wigdor LLP, as and

for their Complaint in this action against Defendants EmblemHealth, Inc., EmblemHealth

Services Company, LLC and ConnectiCare, Inc. ("ConnectiCare") (together, "EmblemHealth,"

the "Company" or "Defendants") hereby allege as follows:

## PRELIMINARY STATEMENT

1.      On its website, EmblemHealth boasts that its "mission" of "provid[ing] access to quality health coverage in ways that respect and respond to people's fundamental needs" is its "promise to the people we serve."  Unfortunately for Plaintiffs and their spouses, they have learned that the Company does not count its own retired officers and their dependents among the "people [they] serve."

2.      For decades, Plaintiffs dedicated their lives to building EmblemHealth into the renowned regional health insurance company that it is today.  Through their leadership and vision serving in the highest levels of the Company's management, including, *inter alia*, Chief Executive Officer, Chief Operating Officer, Chief Actuary, Chief Medical Officer, Chief Information Officer, General Counsel, Executive Vice President, Senior Vice President and Vice President, Plaintiffs developed and instituted many of the policies that were integral to the rise of EmblemHealth in the insurance industry.

3.      When they each retired, Plaintiffs were provided with lifetime retiree health coverage for them and their eligible dependents, under their contracts with EmblemHealth, as part of the consideration for their services (subject to fulfillment of certain considerations by each Plaintiff).  Unfortunately, EmblemHealth later decided it would not honor this agreement – in June 2016, EmblemHealth notified Plaintiffs that it intended to renege on this explicit promise.

4.      Now, Plaintiffs – who have been left to search for expensive health insurance on the open market despite meeting all of the prerequisite conditions to receiving lifetime coverage – are taking action to redress the Company's wrongs against them.

5.      This class action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiffs in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA").  Plaintiffs also bring state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel and a claim for violation of New York Labor Law ("NYLL") § 193, all of which are pled in the alternative to the ERISA claim to the extent any benefit provided for in Plaintiffs' binding agreements with EmblemHealth is not covered by ERISA.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because this action involves federal questions regarding the deprivation of Plaintiffs' rights under the ERISA.  Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' related claims, in the alternative, for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and violation of the NYLL.

7.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

### PLAINTIFFS AND CLASS REPRESENTATIVES

8.      Plaintiff David Abernethy is a 67-year-old former employee of EmblemHealth. He is a resident of the District of Columbia, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

9.      Plaintiff Fred Blickman is a 70-year-old former employee of EmblemHealth.  He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

10.      Plaintiff Paul Bluestein is a 69-year-old former employee of ConnectiCare.  He is a resident of the State of Connecticut, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

11.      Plaintiff Robert Branchini is a 54-year-old former employee of EmblemHealth. He is a resident of the State of New Jersey, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

12.      Plaintiff Dominic D'Adamo is a 70-year-old former employee of EmblemHealth. He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

13.      Plaintiff Marilyn DeQuatro is a 59-year-old former employee of EmblemHealth. She is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

14.      Plaintiff Thomas Dwyer is a 67-year-old former employee of EmblemHealth.  He is a resident of the State of New Jersey, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

15.      Plaintiff Michael Fullwood is a 70-year-old former employee of EmblemHealth. He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

16.     Plaintiff Philip Gandolfo is a 65-year-old former employee of EmblemHealth.  He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

17.     Plaintiff James Greenidge is an 81-year-old former employee of EmblemHealth. He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

18.     Plaintiff Michael Herbert is a 73-year-old former employee of ConnectiCare and EmblemHealth.  He is a resident of the State of Connecticut, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

19.     Plaintiff Steven Kessler is a 66-year-old former employee of EmblemHealth.  He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

20.     Plaintiff Dennis Liotta is a 64-year-old former employee of EmblemHealth.  He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

21.     Plaintiff Daniel McGowan is a 70-year-old former employee of EmblemHealth. He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

22.     Plaintiff Ronald Platt is a 79-year-old former employee of EmblemHealth.  He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

23.     Plaintiff Aran Ron is a 59-year-old former employee of EmblemHealth.  He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

24.     Plaintiff Joan Ruby is a 64-year-old former employee of EmblemHealth.  She is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

25.     Plaintiff Araksi Sarafian is a 70-year-old former employee of EmblemHealth. She is a resident of the State of Nevada, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

26.     Plaintiff Vincent Scicchitano is a 60-year-old former employee of EmblemHealth. He is a resident of the State of New York, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

27.     Plaintiff John Steber is a 70-year-old former employee of EmblemHealth.  He is a resident of the State of New Jersey, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

28.     Plaintiff Leslie Strassberg is a 65-year-old former employee of EmblemHealth. He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

29.     Plaintiff Pedro Villalba is a 67-year-old former employee of EmblemHealth.  He is a resident of the State of Connecticut, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

30.     Plaintiff Anthony Watson is a 76-year-old former employee of EmblemHealth. He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

31.     Plaintiff Marc Wolfert is a 68-year-old former employee of EmblemHealth.  He is a resident of the State of Florida, and at all relevant times met the definition of an "employee" or "eligible employee" under all applicable statutes.

## DEFENDANTS

32.     Defendant EmblemHealth, Inc. is a domestic not-for-profit corporation with its principal place of business at 55 Water Street, New York, New York 10041.  At all relevant times, Defendant EmblemHealth, Inc. met the definition of an "employer" under all relevant statutes.

33.     Defendant EmblemHealth Services Company, LLC is a foreign limited liability company authorized to conduct business in New York with its principal place of business at 55 Water Street, New York, New York 10041.  At all relevant times, Defendant EmblemHealth Services Company, LLC met the definition of an "employer" under all relevant statutes.

34.     Defendant ConnectiCare, Inc. is a wholly owned subsidiary of EmblemHealth, Inc. and EmblemHealth Services Company, LLC, with its principal place of business at 175 Scott Swamp Road, Farmington, Connecticut 06032.  At all relevant times, Defendant ConnectiCare, Inc. met the definition of an "employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

**I.    Plaintiffs' Contributions to EmblemHealth**

35.    Plaintiffs began working at EmblemHealth (or, if employed prior to September 2005, at either Group Health Incorporated or Health Insurance Plan of Greater New York, before the two companies merged to form EmblemHealth) and/or ConnectiCare as early as 1980.

36.    At EmblemHealth, Plaintiffs held various prestigious positions within the Company, including, but not limited to, Chief Executive Officer, Chief Operating Officer, Chief Actuary, Chief Medical Officer, Chief Information Officer, General Counsel, President, Executive Vice President, Senior Vice President and Vice President.

37.    Indeed, it was Plaintiffs who built EmblemHealth into the successful health insurance company it is today, worth approximately $10 billion and with more than 3 million active members.

38.    Without the tireless efforts of Plaintiffs, EmblemHealth would not be nearly as successful as it has been over the last 36 years.

**II.    EmblemHealth's Promises to Plaintiffs**

39.    Despite their contributions to EmblemHealth's success, however, EmblemHealth recently decided it will not honor its explicit and binding written agreements with Plaintiffs to repay them for their hard work through the provision of lifetime retiree health benefits.

40.    Specifically, in each of Plaintiffs' respective employment agreements and/or separation agreements with EmblemHealth, the Company promised to provide retiree health benefits to Plaintiffs and their dependents equal to the health benefits provided to the Company's current executives.

41.     EmblemHealth promised to provide these retiree health benefits to Plaintiffs for the duration of their lives, with no provisions for the Company to stop providing the retirement benefits at any earlier date or for any other reason save for the event that the individual became eligible for coverage under another employer-promulgated healthcare plan.

42.     Each of the 24 Plaintiffs signed binding agreements with EmblemHealth and met the prerequisite conditions to receiving lifetime retiree health coverage.  EmblemHealth, on the other hand, did not uphold its end of the deal.

43.     The retirement plans created by, or benefits promised in, Plaintiffs' various employment and separation agreements with EmblemHealth are unique and distinct from the Company's various other retirement plans.  That said, upon information and belief, the Company entered into similar contracts with other retired EmblemHealth executives.

44.     Moreover, these contracts created an enforceable right to lifetime retiree health benefits consistent with the benefits provided to active EmblemHealth executives and not subject to unilateral withdrawal or revocation by the Company.

III.    **Plaintiffs' Individual Agreements with EmblemHealth**

A.    **David Abernethy**

45.     Mr. Abernethy worked at EmblemHealth from 1996 through August 2013.

46.     When he retired, Mr. Abernethy held the title of Senior Vice President.

47.     Mr. Abernethy's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

48.     When Mr. Abernethy retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provision:

9

> Following the Health Benefit Continuation Period under COBRA, ***you and your eligible dependents are also eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer***, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

49.     From the date of his retirement through the end of 2016 – after which EmblemHealth discontinued Mr. Abernethy and the other Plaintiffs' retiree health coverage – Mr. Abernethy paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

50.     Mr. Abernethy has not worked or consulted full-time since his retirement from EmblemHealth.

51.     Mr. Abernethy enrolled for Medicare as soon as he became eligible.

52.     Mr. Abernethy met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

53.     Put differently, Mr. Abernethy (like all of Plaintiffs) met all of the necessary requirements to receive the health benefits to which he had, and continues to have, a vested right.

**B.     Fred Blickman**

54.     Mr. Blickman began working at EmblemHealth in May 1983 and stayed at the Company until November 2010.

55.     Upon his retirement, Mr. Blickman held the title of Senior Vice President.

56.     Mr. Blickman's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

57.     When Mr. Blickman retired, the Company restated and reaffirmed that he and his dependents were entitled to the same level of health coverage as would be available to an executive in his position and that he would receive this coverage for the remainder of his life:

> *[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer*, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth following the Health Benefit Continuation Period under COBRA as set forth in Section 1(b)(i) or Section 2(b)(i), as applicable. EmblemHealth Retiree Health coverage is conditioned upon (x) maintaining your eligibility for EmblemHealth retiree benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status by not engaging in full-time employment or full-time consulting.

58.     From the date of his retirement through the end of 2016, Mr. Blickman paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

59.     Mr. Blickman has not worked or consulted full-time since his retirement from EmblemHealth.

60.     Mr. Blickman enrolled for Medicare as soon as he became eligible.

61.     Mr. Blickman met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**C.     Paul Bluestein**

62.     Dr. Bluestein began working at ConnectiCare in June of 1994 and retired in October 2013.

63.     Upon his retirement, Dr. Bluestein held the titles of Senior Vice President and Chief Medical Officer.

64.     Dr. Bluestein's employment agreement with ConnectiCare states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

65.     When Dr. Bluestein retired, he signed a separation agreement with ConnectiCare that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage:

> Except as set forth in this Letter of Agreement, your employment letter of agreement . . . ***remains in full force and effect***.

66.     Nothing in Dr. Bluestein's separation agreement altered his and his dependents' entitlement to lifetime retiree health coverage.

67.     From the date of his retirement through the end of 2016, Dr. Bluestein paid the same premium for his coverage as was paid by an executive then-employed by ConnectiCare for the same level of medical benefits.

68.     Dr. Bluestein has not worked or consulted full-time since his retirement from ConnectiCare.

69.     Dr. Bluestein enrolled for Medicare as soon as he became eligible.

70.     ConnectiCare never obtained Dr. Bluestein's written consent to impair his vested rights and entitlements to retiree health coverage.

71.     Dr. Bluestein met all other prerequisite conditions to receiving lifetime retiree health coverage from ConnectiCare.

**D.      Robert Branchini**

72.     Mr. Branchini worked at EmblemHealth from August 1990 through February 2016.

73.     When he retired, Mr. Branchini held the titles of Vice President and Chief Information Officer.

74.     Mr. Branchini's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

75.     When Mr. Branchini retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits in his separation agreement.

76.     From the date of his retirement through the end of 2016, Mr. Branchini paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

77.     Mr. Branchini has not worked or consulted full-time since his retirement from EmblemHealth.

78.     Mr. Branchini is not yet eligible to enroll in Medicare.

79.     Mr. Branchini met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**E.     Dominic D'Adamo**

80.     Mr. D'Adamo worked at EmblemHealth from 2003 to 2008.

81.     Upon his retirement, Mr. D'Adamo held the title of Senior Vice President.

82.     Mr. D'Adamo's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

83.     When Mr. D'Adamo retired, he was eligible to receive lifetime retirement benefits from EmblemHealth for the duration of his life.

84.     When Mr. D'Adamo retired from EmblemHealth, he signed a separation agreement that restated and reaffirmed the Company's binding agreement to provide him and his eligible dependents with lifetime retiree health coverage.

85.     From the date of his retirement through the end of 2016, Mr. D'Adamo paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

86.     Mr. D'Adamo has not worked or consulted full-time since his retirement from EmblemHealth.

87.     Mr. D'Adamo enrolled for Medicare as soon as he became eligible.

88.     Mr. D'Adamo met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**F.      Marilyn DeQuatro**

89.     Ms. DeQuatro worked at EmblemHealth for 32 years.  She began working at the Company in April of 1980 and retired in July 2012.

90.     When Ms. DeQuatro left EmblemHealth, she held the title of Senior Vice President.

91.     Ms. DeQuatro did not have an employment agreement with EmblemHealth.

92.     However, when she retired, Ms. DeQuatro signed a separation agreement with the following provisions:

> Following the Health Benefit Continuation Period under COBRA, ***you and your eligible dependents are also eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer***, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate

14

coordination of benefits for continued health coverage. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

93.    From 2012 through the end of 2016, Ms. DeQuatro paid the same premium for her coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

94.    Since her retirement, Ms. DeQuatro has not worked or consulted full-time.

95.    Ms. DeQuatro is not yet eligible to enroll in Medicare.

96.    Ms. DeQuatro met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**G.    Thomas Dwyer**

97.    Mr. Dwyer began working at EmblemHealth in 2004 and retired in July 2012.

98.    Upon his retirement, Mr. Dwyer held the title of Senior Vice President.

99.    Mr. Dwyer's employment agreement with EmblemHealth stated that, upon his retirement, he and his eligible dependents would be entitled to retiree health coverage for life.

100.    When Mr. Dwyer retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

Following the Health Benefit Continuation Period under COBRA, ***you and your eligible dependents are also eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer***, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage.

> EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

101.   When Mr. Dwyer retired, he was eligible to receive lifetime retirement benefits from EmblemHealth for the duration of his life.

102.   From the date of his retirement through the end of 2016, Mr. Dwyer paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

103.   Mr. Dwyer has not worked or consulted full-time since his retirement from EmblemHealth.

104.   Mr. Dwyer enrolled for Medicare as soon as he became eligible.

105.   Mr. Dwyer met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**H.     Michael Fullwood**

106.   Mr. Fullwood began working at EmblemHealth in August 1998 and stayed at the Company until March 2012.

107.   Upon his retirement, Mr. Fullwood held the titles of Executive Vice President, General Counsel and Chief Financial Officer.

108.   Mr. Fullwood's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

109.   When Mr. Fullwood retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward:

> [P]ursuant to the terms of the Employment Agreement, ***you and your eligible dependents are eligible for EmblemHealth Retiree***

> ***Health Benefits at the same level as that provided an active EmblemHealth Service officer***, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then-employed by EmblemHealth following the Health Benefit Continuation Period under COBRA as set forth in this Section 1(b)(1) or Section 2(b)(1), as applicable. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

110.    From the date of his retirement through the end of 2016, Mr. Fullwood paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

111.    Since his retirement, Mr. Fullwood has not worked or consulted full-time.

112.    Mr. Fullwood enrolled for Medicare, in accordance with his agreement with EmblemHealth, as soon as he became eligible.

113.    Mr. Fullwood met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**I.      Philip Gandolfo**

114.    Mr. Gandolfo began working at EmblemHealth in 1995 and retired in March 2010.

115.    Upon his retirement, Mr. Gandolfo held the title of Senior Vice President.

116.    Mr. Gandolfo's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

117.    When Mr. Gandolfo retired, he signed a separation agreement with EmblemHealth that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage.

118.    From the date of his retirement through the end of 2016, Mr. Gandolfo paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

119.    Mr. Gandolfo has not worked or consulted full-time since his retirement from EmblemHealth.

120.    Mr. Gandolfo enrolled in Medicare as soon as he became eligible.

121.    Mr. Gandolfo met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**J.      James Greenidge**

122.    Mr. Greenidge worked at EmblemHealth from November 1978 through December 2013.

123.    When he retired, Mr. Greenidge held the title of Vice President of Florida Operations.

124.    Mr. Greenidge's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

125.    When Mr. Greenidge retired, he was eligible to receive a benefit under the retiree health coverage.

126.    When Mr. Greenidge retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits in his separation agreement.

127.    From the date of his retirement through the end of 2016, Mr. Greenidge paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

128.    Mr. Greenidge has not worked or consulted full-time since his retirement from EmblemHealth.

129.    Mr. Greenidge is not yet eligible to enroll for Medicare.

130.    Mr. Greenidge met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**K.    Michael Herbert**

131.    Mr. Herbert worked at ConnectiCare from September 2005 through February 2010.

132.    When he retired, Mr. Herbert held the title of Executive Vice President.

133.    Mr. Herbert's employment agreement with ConnectiCare states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

134.    When Mr. Herbert retired, the Company confirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> ***[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health coverage at the same level as that provided an active ConnectiCare officer***, provided that you pay the same amount of premium for such coverage as is paid by an executive them employed by ConnectiCare for the same level of medical benefits immediately following the Health Benefit Continuation Period under COBRA as set forth in Section l(b)(1) or Section 2(b)(1), as applicable. EmblemHealth Retiree Health coverage is conditioned upon (x) your eligibility for EmblemHealth retiree benefits effective the first of the month following your Separation Date; (y) your enrolling in and maintaining coverage in Medicare Parts A and B, at your full premium cost, and EmblemHealth's Medicare Part D drug program, at no additional cost to you; and (z) your maintaining retirement status and not engaging in full-time employment or consulting.

135.    From the date of his retirement through the end of 2016, Mr. Herbert paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth or ConnectiCare for the same level of medical benefits.

136.    Mr. Herbert has not worked or consulted full-time since his retirement from ConnectiCare.

137.    Mr. Herbert enrolled for Medicare as soon as he became eligible.

138.    ConnectiCare never obtained Mr. Herbert's written consent to impair his vested rights and entitlements to retiree health coverage.

139.    Mr. Herbert met all other prerequisite conditions to receiving lifetime retiree health coverage from ConnectiCare.

**L.      Steven Kessler**

140.    Mr. Kessler worked at EmblemHealth from February 1993 through August 2010.

141.    Upon his retirement, Mr. Kessler held the titles of Senior Vice President and Chief Underwriter.

142.    Mr. Kessler signed an employment agreement with EmblemHealth that promised lifetime retiree health coverage for him and his dependents.

143.    When Mr. Kessler retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> *[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer*, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth following the Health Benefit Continuation Period under COBRA as set forth in Section l(b)(i) or Section 2(b)(i), as applicable. EmblemHealth

> Retiree Health coverage is conditioned upon (x) maintaining your eligibility for EmblemHealth retiree benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status by not engaging in full-time employment or full-time consulting.

144.    From the date of his retirement through the end of 2016, Mr. Kessler paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

145.    Mr. Kessler has not worked or consulted full-time since his retirement from EmblemHealth.

146.    Mr. Kessler enrolled for Medicare as soon as he became eligible.

147.    Mr. Kessler met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**M.    Dennis Liotta**

148.    Dr. Liotta worked at EmblemHealth from November 1997 through August 2013.

149.    Upon his retirement, Dr. Liotta held the titles of Vice President and Senior Medical Director.

150.    Dr. Liotta signed an employment agreement with EmblemHealth that promised lifetime retiree health coverage for him and his dependents.

151.    When Dr. Liotta retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> Following the Health Benefit Continuation Period under COBRA, *you and your eligible dependents are also eligible for EmblemHealth Retiree Health Benefits* provided that you pay the same amount of the premium and copays for such coverage as are paid by a participant, and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate

21

> coordination of benefits for continued health coverage. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

152. From the date of his retirement through the end of 2016, Dr. Liotta paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

153. Dr. Liotta has not worked or consulted full-time since his retirement from EmblemHealth.

154. Dr. Liotta is not yet eligible to enroll in Medicare.

155. Dr. Liotta met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**N.    Daniel McGowan**

156. Mr. McGowan worked at EmblemHealth from February 1996 to April 2008.

157. When he retired, Mr. McGowan held the titles of President and Chief Operating Officer.

158. Mr. McGowan signed an employment agreement with EmblemHealth that promised lifetime retiree health coverage for him and his dependents.

159. When Mr. McGowan retired, he signed a separation agreement with EmblemHealth that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage.

160. From the date of his retirement through the end of 2016, Mr. McGowan paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

161.    Mr. McGowan has not worked or consulted full-time since his retirement from EmblemHealth.

162.    Mr. McGowan enrolled for Medicare as soon as he became eligible.

163.    Mr. McGowan met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**O.    Ronald Platt**

164.    Dr. Platt worked at EmblemHealth from 1998 through November 2005.

165.    When he retired, Dr. Platt held the titles of Executive Vice President and Chief Medical Officer.

166.    Dr. Platt's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

167.    When Dr. Platt retired, he signed a separation agreement with EmblemHealth that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage.

168.    As with all of Plaintiffs, Dr. Platt was and is entitled to maintain his executive-level health insurance for the duration of his life, provided he enrolled in Medicare, did not resume full-time employment and paid the same premiums as an executive then-employed by the Company.

169.    From the date of his retirement through the end of 2016, Dr. Platt paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

170.    Dr. Platt has not worked or consulted full-time since his retirement from EmblemHealth.

171.    Dr. Platt enrolled for Medicare as soon as he became eligible.

172.    EmblemHealth never obtained Dr. Platt's written consent to impair his vested rights and entitlements to retiree health coverage.

173.    Dr. Platt met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**P.    Aran Ron**

174.    Dr. Ron began working at EmblemHealth in 1998 and stayed at the Company until 2009.

175.    Upon his retirement, Dr. Ron held the titles of Executive Vice President, Chief Operating Officer and Medical Director.

176.    Dr. Ron signed an employment agreement with EmblemHealth that promised lifetime retiree health coverage for him and his dependents.

177.    When Dr. Ron retired, he signed a separation agreement which stated that he had vested rights and entitlement to lifetime retiree health coverage:

> *[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health coverage, consisting of health benefits for yourself and your eligible dependents* immediately following the Health Benefit Continuation Period under COBRA as set forth in Section l(b) (1) or Section 2 (b) (1), as applicable. EmblemHealth Retiree Health coverage is conditioned upon (x) your eligibility for EmblemHealth retiree benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or consulting.

178.    From the date of his retirement through the end of 2016, Dr. Ron paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

179.   Dr. Ron has not worked or consulted full-time since his retirement from EmblemHealth.

180.   Dr. Ron is not yet eligible to enroll in Medicare.

181.   Dr. Ron met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**Q.   Joan Ruby**

182.   Ms. Ruby worked at EmblemHealth from November 1999 to August 2013.

183.   Upon her retirement, Ms. Ruby held the titles of Vice President and Associate General Counsel.

184.   Ms. Ruby's employment agreement with EmblemHealth states that, upon her retirement, she and her eligible dependents were entitled to retiree health coverage for life.

185.   When Ms. Ruby retired, she signed a separation agreement with EmblemHealth, which restated and reaffirmed the Company's promise of lifetime retiree health benefits  for Ms. Ruby and her dependents:

> At the conclusion of the Health Benefits Continuation Period, ***you will be able to commence Retiree Health Benefits at the same level as that provided a participant, for you and your eligible dependents***, provided that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage. During the Health Benefits Continuation Period, you will be responsible to pay all applicable co-insurance, co-pays, deductibles and other costs as may be otherwise required under the terms of the Health Benefits plans.

186.   From 2013 through the end of 2016, Ms. Ruby paid the same premium for her coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

187.   Since her retirement, Ms. Ruby has not worked or consulted full-time.

188.    Since her retirement, Ms. Ruby has not yet become eligible for Medicare

coverage.

189.    Ms. Ruby met all other prerequisite conditions to receiving lifetime retiree health

coverage from EmblemHealth.

**R.    Araksi Sarafian**

190.    Ms. Sarafian worked at EmblemHealth from 1985 to 1998, and again from

November 2000 to July 2010.

191.    Upon her retirement in July 2010, Ms. Sarafian held the title of Chief Pharmacy

Officer.

192.    Ms. Sarafian signed an employment agreement with EmblemHealth that promised

lifetime retiree health coverage for her and her dependents.

193.    When Ms. Sarafian retired, the Company confirmed that she had a vested right

and entitlement to these benefits going forward by having her sign a separation agreement

containing the following provisions:

> ***You are eligible for EmblemHealth Retiree Health Benefits on
> your Separation date***. Your benefits shall be governed exclusively
> the terms and conditions of such program and are subject to change
> in the event that EmblemHealth amends such retiree health
> benefits program for similarly situated officers. Retiree Health
> coverage, consisting of health benefits immediately following the
> Health Benefit Continuation Period under COBRA as set forth in
> Section 1(b)(1) or Section 2(b)(1), as applicable. EmblemHealth
> Retiree Health coverage is conditioned upon (x) your eligibility for
> Emblem Health retiree benefits effective the first of the month
> following your Separation Date; (y) your enrolling in and
> maintaining coverage in Medicare Parts A and B, at your full
> premium cost, and EmblemHealth's Medicare Part D drug
> program, at no additional cost to you; and (z) your maintaining
> retirement status and not engaging in full-time employment or
> consulting.

194.    As with all of Plaintiffs, Ms. Sarafian was and is entitled to maintain retiree health benefits for the duration of her life, provided she enrolled in Medicare, did not resume full-time employment and paid the same premiums as an executive then-employed by the Company.

195.    From the date of her retirement through the end of 2016, Ms. Sarafian paid the same premium for her coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

196.    Ms. Sarafian has not worked or consulted full-time since her retirement from EmblemHealth.

197.    Ms. Sarafian enrolled for Medicare as soon as she became eligible.

198.    Ms. Sarafian met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**S.      Vincent Scicchitano**

199.    Mr. Scicchitano worked at EmblemHealth from 1992 to December 2008.

200.    Upon his retirement, Mr. Scicchitano held title of Senior Vice President.

201.    Mr. Scicchitano's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

202.    When Mr. Scicchitano retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> ***You are immediately eligible to receive retiree health benefits*** on your Separation Date, your benefits shall be governed exclusively by the terms and conditions of such program.

203.    From the date of his retirement through the end of 2016, Mr. Scicchitano paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

204.    Mr. Scicchitano has not worked or consulted full-time since his retirement from EmblemHealth.

205.    Mr. Scicchitano is not yet eligible to enroll in Medicare.

206.    Mr. Scicchitano met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**T.    John Steber**

207.    Mr. Steber worked at EmblemHealth from March 1997 through June 2012.

208.    When he retired, Mr. Steber held the titles of Executive Vice President and Chief Information Officer.

209.    Mr. Steber's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

210.    When Mr. Steber retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> Following the Health Benefit Continuation Period under COBRA, *you and your eligible dependents are also eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer*, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then employed by EmblemHealth and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation

Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

211.    From the date of his retirement through the end of 2016, Mr. Steber paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

212.    Mr. Steber has not worked or consulted full-time since his retirement from EmblemHealth.

213.    Mr. Steber enrolled for Medicare as soon as he became eligible.

214.    Mr. Steber met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**U.      Leslie Strassberg**

215.    Mr. Strassberg worked at EmblemHealth from February 1994 through August 2010.

216.    When he retired, Mr. Strassberg held the titles of Senior Vice President and Chief Actuary.

217.    Mr. Strassberg's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

218.    When Mr. Strassberg retired, the Company restated and reaffirmed that he had a vested right and entitlement to these benefits going forward by having him sign a separation agreement containing the following provisions:

> *[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer*, provided that you pay the same amount of the premium and copays for such coverage as are paid by an executive then-employed by EmblemHealth following the Health Benefit Continuation Period under COBRA as set forth in

this Section 1(b)(1) or Section 2(b)(1), as applicable. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

219.    From the date of his retirement through the end of 2016, Mr. Strassberg paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

220.    Mr. Strassberg has not worked or consulted full-time since his retirement from EmblemHealth.

221.    Mr. Strassberg is not yet eligible for Medicare.

222.    Mr. Strassberg met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**V.      Pedro Villalba**

223.    Mr. Villalba began working at EmblemHealth in September 1994 and remained with the Company until December 2012.

224.    When he retired, Mr. Villalba held the titles of Senior Vice President and Chief Technology Officer.

225.    Mr. Villalba's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

226.    When Mr. Villalba retired, the Company promised that he would receive retiree health benefits indefinitely:

> *[P]ursuant to the terms of the Employment Agreement, you and your eligible dependents are eligible for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer,* provided that you pay the same amount of the premium and copays for such coverage as are paid

by an executive then employed by EmblemHealth following the Health Benefit Continuation Period under COBRA as set forth in this Section 1(b)(1) or Section 2(b)(1), as applicable. EmblemHealth Retiree Health Benefits is conditioned upon (x) maintaining your eligibility for EmblemHealth Retiree Health Benefits effective the first of the month following your Separation Date; and (y) your maintaining retirement status and not engaging in full-time employment or full-time consulting.

227.    From the date of his retirement through the end of 2016, Mr. Villalba paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

228.    Mr. Villalba has not worked or consulted full-time since his retirement from EmblemHealth.

229.    Mr. Villalba enrolled for Medicare as soon as he became eligible.

230.    Mr. Villalba met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**W.    Anthony Watson**

231.    Mr. Watson worked at EmblemHealth from September 1985 to May 2013.

232.    When he retired, Mr. Watson held the titles of Chief Executive Officer and Chairman of the Board of Directors.

233.    Mr. Watson's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

234.    When Mr. Watson retired, he signed a separation agreement with EmblemHealth that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage.

235.    From the date of his retirement through the end of 2016, Mr. Watson paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

236.    Mr. Watson has not worked or consulted full-time since his retirement from EmblemHealth.

237.    Mr. Watson enrolled for Medicare as soon as he became eligible.

238.    Mr. Watson met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

**X.    Marc Wolfert**

239.    Mr. Wolfert worked at EmblemHealth from February 1992 to December 2008.

240.    Upon his retirement, Mr. Wolfert held the titles of Senior Vice President Chief and Chief Laboratory Officer of EmblemHealth, as well as Chief Operating Officer of the Centralized Laboratory at EmblemHealth.

241.    Mr. Wolfert's employment agreement with EmblemHealth states that, upon his retirement, he and his eligible dependents were entitled to retiree health coverage for life.

242.    When Mr. Wolfert retired, he signed a separation agreement with EmblemHealth that restated and reaffirmed the Company's promise to provide him and his dependents lifetime retiree health coverage.

243.    From the date of his retirement through the end of 2016, Mr. Wolfert paid the same premium for his coverage as was paid by an executive then-employed by EmblemHealth for the same level of medical benefits.

244.    Mr. Wolfert has not worked or consulted full-time since his retirement from EmblemHealth.

245.     Mr. Wolfert enrolled for Medicare as soon as he became eligible.

246.     EmblemHealth never obtained Mr. Wolfert's written consent to impair his vested rights and entitlements to retiree health coverage.

247.     Mr. Wolfert met all other prerequisite conditions to receiving lifetime retiree health coverage from EmblemHealth.

IV.     **EmblemHealth's Refusal to Honor Its Promise of Lifetime Retiree Health Benefits**

248.     Starting on May 31, 2016, each of Plaintiffs received a letter from EmblemHealth stating, "Starting January 1, 2017, EmblemHealth will no longer provide group retiree major medical coverage.  Rather we will provide you with the opportunity to purchase individual insurance coverage . . . on a private health insurance exchange."

249.     Blindsided by this news, several Plaintiffs reached out to EmblemHealth to notify the Company that its decision was in breach of its binding agreements with each Plaintiff.

250.     In response, the Company relied on unrelated language in Plaintiffs' agreements to claim that they had the right to unilaterally change the terms of the agreements, even though no such right existed as to the receipt of Plaintiffs' lifetime insurance benefits.  Notably, the vast majority of Plaintiffs did not negotiate any of the terms of their respective employment agreements or separation agreements.

251.     While the health insurance needs of each Plaintiff and their respective dependents vary, all of them will suffer significant financial hardship as a result of being forced to purchase insurance through a private exchange.

252.     Additionally, Plaintiffs will not be able to find individual coverage on the open market that is nearly as comprehensive as the coverage EmblemHealth promised it would provide.

33

## ERISA CLASS ACTION ALLEGATIONS

253.    The First Cause of Action is being prosecuted as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23.  Plaintiffs David Abernethy, Fred Blickman, Paul Bluestein,  Robert Branchini, Dominic D'Adamo, Marilyn DeQuatro, Thomas Dwyer, Michael Fullwood, Philip Gandolfo, James Greenidge, Michael Herbert, Steven Kessler, Dennis Liotta, Daniel McGowan, Ronald Platt, Aran Ron, Joan Ruby, Araksi Sarafian, Vincent Scicchitano, John Steber, Leslie Strassberg, Pedro Villalba, Anthony Watson and Marc Wolfert ("ERISA Class Representatives") incorporate by reference the allegations from the preceding paragraphs of this Class and Collective Action Complaint.

254.    The Company's violations of ERISA include, but are not limited to, refusing to provide executives in the role of Vice President or a more senior position ("Executives") the benefits to which they have a vested right as established by the employees' separation and/or retirement agreements.

## Class Definition

255.    Plaintiffs seek to maintain claims on their own behalf and on behalf of a class of Executives employed at the Company, who were guaranteed and entitled to retirement benefits concerning subsidized health insurance and whose retirement benefits were materially reduced by the Company without their consent, at any time during the applicable liability or statute of limitations periods, up to and including the date of any judgment in this case (the "ERISA Class" or "ERISA Class Members").  This ERISA Class is so numerous that joinder of all members is impracticable.

256.    Plaintiffs and the proposed ERISA Class have standing to seek such relief because of the adverse effects that Defendants' denial of benefits have had on them individually and as a group.

257.    The denials of benefits described in this Complaint now appear to be part of EmblemHealth's normal course of conduct.

**Numerosity and Impracticality of Joinder**

258.    The ERISA Class Members are sufficiently numerous to make joinder of all of them impractical.  While the exact number of ERISA Class Members is unknown because such information is in the exclusive control of Defendants, there are a sufficient number of former older Executives who have been the victim of identical or similar breaches by EmblemHealth, in violation of federal law, such that joinder of all members is impracticable.

259.    Although the number of ERISA Class Members is incapable of precise determination at this time, it is significant and satisfies the numerosity requirement of FRCP 23(a).

**Common Questions of Law and Fact**

260.    The claims alleged on behalf of the ERISA Class Representatives raise questions of law and fact common to the ERISA Class.  Chief among these questions is whether the ERISA Class had a vested right to lifetime retiree health benefits, and whether Defendants unlawfully deprived the ERISA Class Members of the full value of the benefits to which they were entitled without their consent.

261.    Thus, the common question requirement of FRCP 23(a) is satisfied.

**Typicality of Claims and Relief Sought**

262.     ERISA Class Representatives are members of the class they seek to represent.  As described in more detail above, the claims of the ERISA Class Representatives are typical of the claims of the proposed ERISA Class in that both sets of claims arise from identical or substantially identical separation and/or retirement agreements with Defendants, and are based on the legal theory that Defendants denied the proposed ERISA Class benefits to which they had a guaranteed and vested right under the terms of those separation and/or retirement agreements in violation of federal law.  The ERISA Class Representatives and the ERISA Class Members all allege that they each were unlawfully denied benefits by Defendants in the same or substantially same manner when Defendants attempted to materially diminish their benefits without their contractually-mandated consent.  The relief the ERISA Class Representatives seek for Defendants' unlawful breaches is typical of the relief which is sought on behalf of the ERISA Class Members.

263.     The unlawful denial of benefits suffered by the ERISA Class Representatives, and the damages resulting therefrom, is sadly typical of Defendants' treatment of its Executives, and specifically the ERISA Class Members.

264.     Thus, the typicality requirement of FRCP 23(a) is satisfied.

**Adequacy of Representation**

265.     The interests of the ERISA Class Representatives are co-extensive with those of the ERISA Class Members they seek to represent in the instant case.  The ERISA Class Representatives are willing and able to represent the proposed ERISA Class fairly and vigorously as they pursue their similar individual claims.  The ERISA Class Representatives have retained counsel who are qualified and experienced in employment class action litigations

and who are able to meet the demands necessary to litigate a class action of this size and complexity.

266.    The combined interests, experience and resources of the ERISA Class Representatives and their counsel to competently litigate the individual and ERISA Class claims at issue in the instant case satisfies the adequacy of representation requirement of FRCP 23(a).

**Requirements of FRCP 23(b)(1)**

267.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Specifically, all evidence of Defendants' denials of benefits, their administration of the retirement plans covering the ERISA Class Members, whether the ERISA Class Members have a vested right to such benefits and the issue of whether they are in violation of federal law would be exchanged and litigated in dozens of separate litigations.  Accordingly, certification of the proposed ERISA Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the ERISA Class and Defendants.

268.    By filing this Class and Collective Action Complaint, Plaintiffs are preserving the rights of ERISA Class Members with respect to the statute of limitations on their claims. Therefore, not certifying a class would substantially impair and/or impede the other ERISA Class Members' ability to protect their interests.

**Requirements of FRCP 23(b)(2)**

269.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the ERISA Class Members, by denying benefits to each of the ERISA Class Members and refusing to address their complaints about the same.  These acts are not sporadic or isolated, and

support the request for final injunctive and declaratory relief with respect to Plaintiffs and the

ERISA Class as a whole.

270.     Declaratory and injunctive relief flow directly and automatically from proof of the

common questions of law and fact regarding the entitlement to and denial of retirement benefits

to the ERISA Class Members.

271.     Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs

and the ERISA Class Members' entitlement to monetary and non-monetary remedies for

individual losses caused by, and exemplary purposes necessitated by, such denials of benefits.

272.     Accordingly, injunctive and declaratory relief is among the predominant forms of

relief sought in this case.

**Requirements of FRCP 23(b)(3)**

273.     The common issues of fact and law affecting the ERISA Class Representatives'

claims and those of the ERISA Class, including, but not limited to, the common issues identified

in the paragraphs above, predominate over issues affecting only individual claims.

274.     A class action is superior to other available means for the fair and efficient

adjudication of Plaintiffs' claims and the claims of the proposed ERISA Class.

275.     The cost of proving Defendants' pattern and practice of denying benefits to

Executives makes it impractical for the members of the ERISA Class to pursue their claims

individually.

276.     The class action will not be difficult to manage for reasons including, but not

limited to, the discrete organizational nature of all ERISA Class Members (they must have

worked for Defendants as Executives, meaning in the role of Vice President or a more senior

position, and have received substantially similar post-retirement health benefits as described

above), as well as the common questions of law and fact herein.

<u>**CONTRACT CLASS ACTION ALLEGATIONS**</u>

277.    The Second, Third, Fourth and Fifth Causes of Action, which are alleged as an

alternative in the event that Plaintiffs' separation and/or retirement agreements with

EmblemHealth are not deemed an ERISA plan, are being prosecuted as a class action pursuant to

FRCP 23.  Plaintiffs David Abernethy, Fred Blickman, Paul Bluestein,  Robert Branchini,

Dominic D'Adamo, Marilyn DeQuatro, Thomas Dwyer, Michael Fullwood, Philip Gandolfo,

James Greenidge, Michael Herbert, Steven Kessler, Dennis Liotta, Daniel McGowan, Ronald

Platt, Aran Ron, Joan Ruby, Araksi Sarafian, Vincent Scicchitano, John Steber, Leslie

Strassberg, Pedro Villalba, Anthony Watson and Marc Wolfert ("Contract Class

Representatives") incorporate by reference the allegations from the preceding paragraphs of this

Class and Collective Action Complaint.

278.    The breaches of contract committed by the Company included, but are not limited

to, refusing to honor contractual promises to provide lifetime retiree health coverage contained in

EmblemHealth's separation and/or retirement agreements with Executives.

<u>**Class Definition**</u>

279.    Plaintiffs seek to maintain claims on their own behalf and on behalf of a class of

Executives employed at the Company who were contractually provided with retirement benefits,

and whose benefits were materially diminished by the Company without the required consent of

the Executives (the "Contract Class" or "Contract Class Members").  The Contract Class is

further made up of any such Executives who received the aforementioned post-retirement

benefits at any time during the applicable liability or statute of limitations periods, up to and

including the date of any judgment in this case. This Contract Class is so numerous that joinder of all members is impracticable.

280.   Plaintiffs and the proposed Contract Class have standing to seek such relief because of the adverse effects that Defendants' breaches of contract have had on them, individually and generally.

281.   The breaches of contract described in this Complaint now appear to be part of EmblemHealth's normal course of conduct.

**Numerosity and Impracticality of Joinder**

282.   The Contract Class Members are sufficiently numerous to make joinder of all of them impractical. While the exact number of Contract Class Members is unknown because such information is in the exclusive control of Defendants, there are a sufficient number of former older Executives who have been the victim of identical or similar breaches by EmblemHealth, in violation of federal and state law, such that joinder of all members is impracticable.

283.   Although the number of Contract Class Members is incapable of precise determination at this time, it is significant and satisfies the numerosity requirement of FRCP 23(a).

**Common Questions of Law and Fact**

284.   The claims alleged on behalf of the Contract Class Representatives raise questions of law and fact common to the Class. Chief among these questions is: (1) whether Defendants entered into binding contracts with their Executives; (2) whether Defendants breached those binding contracts; and (3) whether the Contract Class Members suffered damages as a result of such breach.

285.   Thus, the common question requirement of FRCP 23(a) is satisfied.

## Typicality of Claims and Relief Sought

286.     The Contract Class Representatives are members of the class they seek to represent.  The claims of the Contract Class Representatives are typical of the claims of the proposed Contract Class in that they all arise from the identical or similar separation and/or retirement agreements with Defendants, and are based on the legal theory that Defendants breached these separation and/or retirement agreements in violation of state law.  The Contract Class Representatives and the Contract Class Members all allege that they each were the victim of breaches of contract by Defendants.  The relief Plaintiffs seek for Defendants' unlawful breaches is typical of the relief which is sought on behalf of the Contract Class Members.

287.     The unlawful breach suffered by the Contract Class Representatives, and the damages resulting therefrom, is sadly typical of Defendants' treatment of the Contract Class Members as a whole.

288.     Thus, the typicality requirement of FRCP 23(a) is satisfied.

## Adequacy of Representation

289.     The interests of the Contract Class Representatives are co-extensive with those of the Contract Class Members they seek to represent in the instant case.  The Contract Class Representatives are willing and able to represent the proposed Contract Class fairly and vigorously as they pursue their similar individual claims.  The Contract Class Representatives have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

290.     The combined interests, experience and resources of the Contract Class Representatives and their counsel to competently litigate the individual and Contract Class

41

claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

**Requirements of FRCP 23(b)(1)**

291.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Specifically, all evidence of whether Defendants breached the identical or nearly identical separation and/or retirement agreements with the Contract Class Members would be exchanged and litigated repeatedly.  Accordingly, certification of the proposed Contract Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Contract Class and Defendants.

292.    By filing this Class and Collective Action Complaint, Plaintiffs are preserving the rights of Contract Class Members with respect to the statute of limitations on their claims. Therefore, not certifying a class would substantially impair and/or impede the other members' ability to protect their interests.

**Requirements of FRCP 23(b)(2)**

293.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the Contract Class Members, by breaching identical or nearly identical separation and/or retirement agreements with each of the Contract Class Members.  These acts are not sporadic or isolated, and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the Contract Class as a whole.

294.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence and breach of explicit separation and/or retirement agreements with the Contract Class Members.

295.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs'

and the Contract Class Members' entitlement to monetary and non-monetary remedies for

individual losses caused by, and exemplary purposes necessitated by, such breaches of contract.

296.    Accordingly, injunctive and declaratory relief is among the predominant forms of

relief sought in this case.

**Requirements of FRCP 23(b)(3)**

297.    The common issues of fact and law affecting the Contract Class Representatives'

claims and those of the Contract Class, including, but not limited to, the common issues

identified in the paragraphs above, predominate over issues affecting only individual claims.

298.    A class action is superior to other available means for the fair and efficient

adjudication of Plaintiffs' claims and the claims of the proposed Contract Class.

299.    The cost of proving Defendants' pattern and practice of breaching their separation

and/or retirement agreements with Executives makes it impractical for the members of the

Contract Class to pursue their claims individually.

300.    The class action will not be difficult to manage for reasons including, but not

limited to, the discrete organizational nature of all Contract Class Members (they must have

worked for Defendants as Executives, meaning in the role of Vice President or a more senior

position), as well as the common questions of law and fact described above.

**FIRST CAUSE OF ACTION**
**(Denial of Benefits in Violation of 29 U.S.C. § 1132(a)(1)(B))**
**(*Individual and Class Claims*)**

301.    Plaintiffs and the members of the ERISA Class hereby repeat, reiterate and re-

allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

43

302.     The terms of Plaintiffs' respective separation and/or retirement agreements (the "Agreements") constitute an "employee pension benefit plan" and/or "employee welfare benefit plan" as those terms are defined in 29 U.S.C.A. § 1002.

303.     29 U.S.C.A. § 1132(a)(1)(B), provides that "A civil action may be brought [ ] by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

304.     Defendants have ceased providing the benefits to which Plaintiffs are entitled under the Agreements.

305.     As such, Plaintiffs bring this action under 29 U.S.C.A. § 1132(a)(1)(B) to recover benefits due to them under the Agreements, to enforce their rights under the Agreements and to clarify their rights to future benefits under the Agreements.

306.     Pursuant to 29 U.S.C.A. § 1132(g), Plaintiffs also are entitled to an award of reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(As an Alternative Claim in the Event the Agreements Do Not Constitute an ERISA Plan)**
**(Breach of Contract)**
**(*Individual and Class Claims*)**

307.     Plaintiffs and the members of the Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

308.     EmblemHealth entered into binding and enforceable contracts with Plaintiffs pursuant to which EmblemHealth would provide them and their eligible dependents with health benefits for life.

309.     EmblemHealth breached these contracts by withdrawing its retiree health coverage from Plaintiffs.

310.    EmblemHealth's breaches of contract have caused Plaintiffs to suffer monetary and/or economic harm, for which they are entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
**(As an Alternative Claim in the Event the Agreements Do Not Constitute an ERISA Plan)**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(*Individual and Class Claims*)**

311.    Plaintiffs and the members of the Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

312.    EmblemHealth entered into binding and enforceable contracts with Plaintiffs pursuant to which EmblemHealth would provide them and their eligible dependents with health benefits for life.

313.    By withdrawing its retiree health coverage from Plaintiffs, EmblemHealth acted in a manner that, even if not expressly forbidden by any contractual provision, deprived Plaintiffs of the right to receive benefits under these contracts.

314.    EmblemHealth's implied promise to act in good faith and deal fairly with Plaintiffs is not contrary to any express provision in the contracts.

315.    EmblemHealth's breaches have caused Plaintiffs to suffer monetary and/or economic harm, for which they are entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
**(As an Alternative Claim in the Event the Agreements Do Not Constitute an ERISA Plan)**
**(Promissory Estoppel)**
**(*Individual and Class Claims*)**

316.    Plaintiffs and the members of the Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

317.     As part of EmblemHealth's efforts to induce Plaintiff to retire and not to bring claims for age discrimination, the Company promises to provide Plaintiff's with retiree health coverage for life.

318.     EmblemHealth partially performed pursuant to its promise by providing retiree health benefits until January 1, 2017.

319.     Plaintiffs reasonably and foreseeably relied upon these promises and partial performance to their detriment by leaving EmblemHealth, not asserting claims against EmblemHealth for age discrimination and not searching for comparable work.

320.     Based upon Plaintiffs' reasonable and foreseeable detrimental reliance upon these promises and partial performance, EmblemHealth was estopped from failing to provide Plaintiffs with health benefits for the rest of their lives.

**FIFTH CAUSE OF ACTION**
**(As an Alternative Claim in the Event the Agreement Does Not Constitute an ERISA Plan)**
**(Unlawful Deductions in Violation of New York Labor Law § 193)**
**(*Individual and Class Claims*)**

321.     Plaintiffs and the members of the Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

322.     NYLL § 193 prohibits covered employers, such as Defendants, from making deductions from the wages of any employee.

323.     The employee benefits due to Plaintiffs under the Agreements are "wages" as defined in NYLL § 190(1).

324.     Defendants made unlawful deductions and withholdings from Plaintiffs' wages when Defendants ceased paying them in accordance with the Agreements.

325.    As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the ERISA and Contract Class Members pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the ERISA and Contract Classes, including all last known addresses, telephone numbers and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Designate Plaintiffs David Abernethy, Fred Blickman, Paul Bluestein,  Robert Branchini, Dominic D'Adamo, Marilyn DeQuatro, Thomas Dwyer, Michael Fullwood, Philip Gandolfo, James Greenidge, Michael Herbert, Steven Kessler, Dennis Liotta, Daniel McGowan, Ronald Platt, Aran Ron, Joan Ruby, Araksi Sarafian, Vincent Scicchitano, John Steber, Leslie Strassberg, Pedro Villalba, Anthony Watson and Marc Wolfert as representatives of their class, and their counsel of record as class counsel;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs and Class Members for all monetary and/or economic damages,

47

including, but not limited to, loss of retiree health coverage for them and their eligible

dependents;

      F.      An award of damages for any and all other monetary and/or non-monetary losses

suffered by Plaintiffs and Class Members in an amount to be determined at trial, plus

prejudgment interest;

      G.      An award of punitive damages in an amount to be determined at trial;

      H.      An award of costs that Plaintiffs and Class Members have incurred in this action,

including, but not limited to, expert witness fees, as well as Plaintiffs' and Class Members'

reasonable attorneys' fees and costs to the fullest extent permitted by law; and

      I.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

      Plaintiffs, on behalf of themselves and on behalf of all other similarly-situated persons,

hereby demand a trial by jury on all issues of fact and damages.

Dated: October 11, 2017                Respectfully submitted,
      New York, New York

                                **WIGDOR LLP**

                                By: _____
                                  Douglas H. Wigdor
                                  Renan F. Varghese

                                85 Fifth Avenue
                                New York, NY 10003
                                Telephone:  (212) 257-6800
                                Facsimile:   (212) 257-6845
                                dwigdor@wigdorlaw.com
                                rvarghese@wigdorlaw.com

                                *Attorneys for Plaintiffs and the Proposed*
                                *ERISA Class and Contract Class*