**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID ABERNETHY, FRED BLICKMAN, PAUL BLUESTEIN, DOMINIC D'ADAMO, MARILYN DEQUATRO, THOMAS DWYER, MICHAEL FULLWOOD, PHILIP GANDOLFO, MICHAEL HERBERT, STEVEN KESSLER, DENNIS LIOTTA, DANIEL MCGOWAN, RONALD PLATT, ARAN RON, JOAN RUBY, VINCENT SCICCHITANO, JOHN STEBER, LESLIE STRASSBERG, PEDRO VILLALBA, ANTHONY WATSON, and MARC WOLFERT, on behalf of themselves and all other similarly-situated individuals, | No. 1:17-cv-7814 (DAB) (RWL) Hon. Deborah A. Batts |
| Plaintiffs, | |
| v. | |
| EMBLEMHEALTH, INC., EMBLEMHEALTH SERVICES COMPANY, LLC, and CONNECTICARE, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS**

## **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................... 2

II.  BACKGROUND ................................................................................................... 5

III.  STANDARD FOR MOTION TO DISMISS ...................................................... 8

IV.  ARGUMENT ........................................................................................................ 8

   A.  Counts I-II Should Be Dismissed, Given That Plaintiffs' Retiree Health Benefits Are Not Vested ................................................................................................................ 8

      1.  The Plan Document Expressly Provides that Retiree Health Benefits May Be Amended or Terminated ..................................................................................... 10

      2.  The Summary Document Plaintiffs Cite Relating to Plaintiff Watson Expressly States that Benefits Are Subject to Modification ............................................. 12

      3.  Plaintiffs' Severance And/Or Employment Agreements Cannot Establish Vested Benefits, Given EmblemHealth's Reservation of Rights In the SPDs ................ 12

      4.  Nothing In the Separation And/Or Employment Agreements Creates Vested Retiree Health Benefits............................................................................................... 14

   B.  Even If Plaintiffs Had a Vested Right to Health Benefits, Their Breach of Fiduciary Duty Claim In Count II Fails ............................................................................. 19

      1.  Plaintiffs Have Not Pled Facts to Support a Breach of Fiduciary Duty Claim .......... 19

      2.  The Relief Plaintiffs Seek In Count II Is Not Available Under the Alleged Facts..... 21

   C.  Plaintiffs' Claims Under New York Law Are Preempted............................................. 26

   D.  Plaintiffs Cannot Establish that the Elements of Class Certification Can Be Satisfied . 28

V.  CONCLUSION ................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Tetley USA, Inc.*, 363 F. Supp. 2d 94 (D. Conn. 2005) .................................................. 19

*Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538 (8th Cir. 2007) ...................................................................................................................... 7

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ........................................................................ 26

*Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976 (2d Cir. 1997) .... 9

*Arditi v. Lighthouse, Int'l.*, 676 F.3d 294 (2d Cir. 2012) .................................................... 5, 26, 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ......................................... 6

*Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224 (1st Cir. 2006) .................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 4, 8

*Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121 (E.D.N.Y. 2000) ...................... 10

*Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, (W.D.N.Y. 2006) .... 6

*Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55 (2d Cir. 2006) ................................... 10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................................... 6

*CNH Indus. N.V. v. Reese*, 583 U.S. __, No. 17-515, 2018 WL 942419 (Feb. 20, 2018) .. 9, 10, 16

*Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583 (W.D.N.Y. 2011) .................................................. 19

*Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73 (1995) ........................................................ 9

*Danis v. Cultor Sci., Inc.*, 154 F. Supp. 2d 247 (D. Conn. 2001) ................................................ 15

*Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) .................................... 10

*Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002) .............................................. 7

*Fisher v. J.P. Morgan Chase & Co.*, 703 F. Supp. 2d. 374  (S.D.N.Y. 2010) ........................ 4, 20

*Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851 (4th Cir. 1994) ................................................. 11

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003) ............................................................... 24

*Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir. 1985) ............................................ 5, 27

*Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204 (2002)................................................. 25

*Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786 (8th Cir. 2002).................................................. 13

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ...................................................... 8

*Infantilino v. Joint Indus. Bd. of the Elec. Indus.*, No. 06-cv-00520, 2007 WL 879415 (E.D.N.Y. Mar. 15, 2007)...................................................................................................................... 24

*Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404 (S.D.N.Y. 2016)........................................... 29

*Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130 (2d Cir. 1999) ............................................. 9, 10, 16

*Kelly v. Honeywell Int'l, Inc.*, 233 F. Supp. 3d 302 (D. Conn. 2017)............................................. 9

*LaRocca v. Borden, Inc.*, 276 F.3d 22 (1st Cir. 2002) .................................................................. 25

*M & G Polymers USA, LLC v. Tackett*, __ U.S. __, 135 S. Ct. 926 (2015) ................... 3, 9, 10, 15

*M.G. v. N.Y.C. Dep't of Educ.*, 162 F. Supp. 3d 216 (S.D.N.Y. 2015)......................................... 28

*Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076 (8th Cir. 2012) ............................................................................................... 11

*Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488 (2d Cir. 1988) ....................................... 13, 15

*N.J. Carpenters Health Fund v. Rali Series 2006-Q31 Trust*, 477 F. App'x 809 (2d Cir. 2012). 28

*New York State Psychiatric Ass'n v. UnitedHealthGroup, Inc.*, 798 F.3d 125 (2d Cir. 2015)..... 22

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008) ........................... 5, 26, 27

*Parillo v. FKI Indus., Inc.*, 608 F. Supp. 2d 264 (D. Conn. 2009) ............................................... 10

*Peterson v. Windham Cmty. Mem'l Hosp., Inc.*, 803 F. Supp. 2d 96 (D. Conn. 2011) ............... 19

*Rafter v. Liddle*, 704 F. Supp. 2d 370 (S.D.N.Y. 2010)................................................................. 8

*Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340 (5th Cir. 2017) ........................... 7

*Rochow v. Life Ins. Co. of N.A.*, 780 F.3d 364 (6th Cir. 2015)............................................... 22, 24

*S.E.C. v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ......................................................................... 4

*Seitzman v. Sum Life Assurance Co. of Canada, Inc.*, 311 F.3d 477 (2d Cir. 2002)................... 29

*Senn v. United Dominion Indus., Inc.*, 951 F.2d 806 (7th Cir. 1992) ..................................... 15, 16

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (*en banc*) ......................... 11, 13

*Stearns v. NCR Corp.*, 297 F.3d 706 (8th Cir. 2002) ..................................................... 13

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 14-cv-1835 (SJF)(AYS), 2016 WL 3676434
   (E.D.N.Y. Jul. 7, 2016) .......................................................................................... 22

*Vallone v. CNA Fin. Corp.*, 375 F.3d 623 (7th Cir. 2004) ............................................ 13

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ......................................................... 21, 22

*Verdier v. Thalle Constr. Co., Inc.*, No. 14-cv-04436, 2017 WL 78512 (S.D.N.Y. Jan. 5, 2017) 24

*Zappier v. Sun Life Assur. Co. of Canada*, No. 05-cv-05300, 2006 WL 2621110 (S.D.N.Y. Aug.
   10, 2006), report and recommendation adopted, No. 05-cv-05300, 2006 WL 2627967
   (S.D.N.Y. Sept. 12, 2006) ......................................................................................... 24

*Zielinski v. Pabst Brewing Co., Inc.*, 360 F. Supp. 2d 908 (E.D. Wis. 2005) ........................ 25, 26

**Statutes**

ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B) ....................................... 3, 5, 26, 27

ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3) ................................................. 3, 4, 21, 25

New York Labor Law § 193 ................................................................................ 5, 26, 27

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

Fed. R. Civ. P. 23 ............................................................................................... 28

Defendants EmblemHealth, Inc., EmblemHealth Services Company, LLC, and ConnectiCare, Inc. (collectively, "EmblemHealth" or the "Company"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully move for dismissal of Plaintiffs' Amended putative class action Complaint (the "Amended Complaint"), ECF Dkt. 23, with prejudice.

In their original Complaint, Plaintiffs – who are 21 former highly compensated executives – alleged that they had a vested right to retiree health benefits for the entirety of their lives.[1]  In response to the Company's Motion to Dismiss, Plaintiffs filed an Amended Complaint, which now alleges that they have a vested right to retiree health benefits only for so long as the Company provides health coverage to its active employees.  According to Plaintiffs, because the Company still offers health insurance coverage to its active employees, Plaintiffs are entitled to those same benefits.  In other words, Plaintiffs still assert a vesting claim; it's just that the duration of their retiree health benefits may be shorter than their lifetimes.

Despite fundamentally reversing course as to their claim of lifetime vesting, Plaintiffs' Amended Complaint is, in many ways, indistinguishable from the original Complaint.  Plaintiffs once again allege that EmblemHealth violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA") when it modified their retiree health benefits.  But other than the addition of inflammatory rhetoric that is typical of Plaintiffs' counsel[2] – and a new cause of

---

[1] Three Plaintiffs identified in the original Complaint have dropped out of the lawsuit:  Robert Branchini, James Greenidge, and Araksi Sarafian.

[2] Plaintiffs' lead counsel, Douglas Wigdor, has publicly acknowledged that he drafts complaints for purposes of creating adverse press coverage for defendants.  As stated by Mr. Wigdor, "When we write our complaints, there's an effort on our part to make it as colorful as possible. . . We're writing in a way that puts the company on its heels.  Because we know that these companies have multimillion [dollar] marketing resources.  Now we're suing this company and trying to change the public perception."  Felix Gillette, *The Trump-Loving Lawyer Who Won't Stop Suing Fox News*, BLOOMBERG BUSINESSWEEK, *available at*

1

action seeking monetary relief (including punitive damages) that is plainly not viable under ERISA – the Amended Complaint rehashes the same arguments and theories of liability that were deficient in the original Complaint.  Accordingly, the Amended Complaint should be dismissed in its entirety, with prejudice.  Additionally, given the utterly baseless nature of some of Plaintiffs' claims and demands (such as asserting contract claims that are clearly preempted, and seeking punitive damages, which are not available under ERISA) – EmblemHealth moves, pursuant to ERISA Section 502(g)(1) – that Plaintiffs be required to pay the Company's legal fees in defending against this action.

## I.     INTRODUCTION

Prior to January 2017, EmblemHealth offered Plaintiffs – 21 former highly compensated Company executives, the majority of whom were involuntarily terminated from their positions – major medical coverage under the Company's health insurance plan.  (Am. Compl., ¶¶ 3 and 6).  Effective January 1, 2017, EmblemHealth modified the health benefits available to all of its retirees, including Plaintiffs.  (Letter to Retirees dated May 31, 2016, attached to the Declaration of Mark C. Nielsen dated February 26, 2018 ("Nielsen Decl.") as Exhibits A-U ("Exs. A-U")).  Specifically, instead of providing retirees with major medical coverage under an insurance or HMO contract offered by the Company, as was the case prior to 2017, EmblemHealth established a Health Reimbursement Account ("HRA") for eligible retirees, to which the Company credits $6,000 per year for those who are not yet Medicare eligible, and $1,200 for those who are Medicare eligible.  Retirees can use the amounts credited to the HRA to purchase any health insurance they want from any carrier.

---

https://www.bloomberg.com/news/features/2017-09-22/the-trump-loving-lawyer-who-won-t-stop-suing-fox-news (last visited February 26, 2018).

Plaintiffs allege that EmblemHealth's establishment of an HRA for their benefit is impermissible because they were promised, in their Separation and/or Employment Agreements, "health benefits . . . so long as they met certain eligibility requirements (which all Plaintiffs did)[.]"  (Am. Compl., ¶ 2).  Plaintiffs allege that the benefit modification constitutes a "denial of benefits" actionable under ERISA Section 502(a)(1)(B) (Count I).  Additionally, in Count II, they allege that EmblemHealth breached its fiduciary duties to Plaintiffs by "misrepresenting and defrauding Plaintiffs . . . of their right to continued retiree health benefits," Am. Compl. ¶ 129, entitling them to recovery under ERISA Section 502(a)(3).  As an alternative to the ERISA claims, Plaintiffs allege EmblemHealth engaged in a contractual breach or statutory violation actionable under New York State law (Counts III-VI).

Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.  Specifically, with respect to the denial of benefits claim under ERISA Section 502(a)(1)(B) (Count I):

- The Summary Plan Descriptions ("SPDs"), which serve as the Plan Documents governing the health plan at issue, expressly provide that EmblemHealth "has the right to amend or terminate" the plan "at any time," thus disproving Plaintiffs' claim to vested retiree health benefits.

- Additionally, a plain reading of the Separation and Employment Agreements upon which Plaintiffs rely discloses that there is no language that can plausibly be read to promise Plaintiffs vested retiree health benefits – let alone a particular benefit package – for any period of time.  This is fatal to Plaintiffs' ERISA claims, given that the Supreme Court has held that where, as here, contracts are silent as to the duration of retiree health benefits, a court may not infer that the parties intended the benefits to vest for life. *M & G Polymers USA, LLC v. Tackett*, __ U.S. __, 135 S. Ct. 926, 937 (2015).  *See also*

*CNH Indus. N.V. v. Reese*, 583 U.S. __, No. 17-515, 2018 WL 942419, at * 5 (Feb. 20, 2018).

Count II of the Amended Complaint – which seeks recovery under ERISA Section 502(a)(3) for an alleged fiduciary breach – should also be dismissed. Specifically:

- Plaintiffs allege that EmblemHealth breached its fiduciary duties by "misrepresenting and defrauding Plaintiffs . . . of their right to continued retiree health benefits," and purport to seek "other appropriate equitable relief" under ERISA Section 502(a)(3). But Plaintiffs' allegations of "misrepresentation" and "fraud" are nothing more than conclusions of law masquerading as factual allegations, and, accordingly, are not entitled to a presumption of truthfulness at the motion to dismiss stage. Indeed, it is telling that the Amended Complaint *does not identify even one alleged oral or written misrepresentation* by EmblemHealth, made before the modification in question went into effect, and Plaintiffs make no attempt to establish how they were allegedly defrauded. This requires dismissal of Plaintiffs' breach of fiduciary duty claim. *See, e.g.*, *Fisher v. J.P. Morgan Chase & Co.*, 703 F. Supp. 2d. 374, 387-88 (S.D.N.Y. 2010) (dismissing fiduciary breach claims where plaintiffs failed to identify any misleading statements); *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

- Even if Plaintiffs could establish a viable misrepresentation or fraud claim – which they cannot – the relief they seek under ERISA Section 502(a)(3) is not available, given that: (1) Plaintiffs would be made whole by the relief they seek under Count I

(reinstatement of their prior benefit coverage and clarification of their continued right

to such coverage), and (2) the relief they seek, including disgorgement of allegedly

"lost profits" and punitive damages, is not available.

Plaintiffs' "alternative" causes of action (Counts III-VI), which allege various forms of

contractual breach or statutory violation, should also be dismissed, given that ERISA Section

502(a)(1)(B) completely preempts any state law cause of action based on an employee benefit

plan's denial of a benefit.  Indeed, the Second Circuit has expressly held that claims alleging

breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory

estoppel – which are the state law claims asserted by Plaintiffs in Counts III, IV, and V – are

preempted by ERISA.  *Arditi v. Lighthouse, Int'l.*, 676 F.3d 294, 299-301 (2d Cir. 2012) (breach

of contract); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008)

(breach of implied covenant of good faith and fair dealing); *Gilbert v. Burlington Indus., Inc.*,

765 F.2d 320, 326-28 (2d Cir. 1985), *aff'd* 477 U.S. 901 (1986) (promissory estoppel).

As for Plaintiffs' claim in Count VI that EmblemHealth violated New York Labor Law

("NYLL") Section 193 – which generally prohibits an employer from withholding wages from

an employee without the employee's written consent – Plaintiffs fail to state a claim, given that

they themselves acknowledge that they are *not* employees of EmblemHealth, and indeed,

completely separated from Company service.

Additionally, the former senior executives who are the Plaintiffs in this action are not

representative of any other former Company employees, and for this and other reasons, this case

– if not dismissed – cannot proceed as a class action.

## II.   BACKGROUND

EmblemHealth (and its related affiliates named as Defendants in this action) is a health

insurance company that provides individuals residing in its service areas with access to quality

health insurance coverage.  (Am. Compl., ¶¶ 1, 36-38).  As acknowledged in Plaintiffs'

Amended Complaint, the Company provides its eligible employees, as well as eligible retirees,

with health coverage through an ERISA-covered employee welfare benefit plan.

Plaintiffs are former Company executives who, following their separation from service,

were eligible for retiree health benefits under a component of the EmblemHealth Services

Company, LLC Health and Welfare Plan[3] (the "Plan").[4]  The SPDs for the Plan describe the

health benefits available to retired[5] managers and officers, and also provide that "*EmblemHealth

Services, as Plan Sponsor, has the right to amend or terminate the Plan at any time*."  (Emphasis

added).  *See* Officer Retiree Health and Welfare Plan (effective 1/1/16), Exhibit V to Nielsen

Decl. ("Ex. V") § 13; Officer Retiree Health and Welfare Plan (effective 1/1/15), Exhibit W to

---

[3] The EmblemHealth Services Company, LLC Health and Welfare Plan (the "Plan") is a single omnibus employee welfare benefit plan encompassing coverage for all eligible former EmblemHealth employees.  The Plan encompasses both what is known as the "Officer Retiree Health and Welfare Plan" and what is known as the "Management Retiree Health and Welfare Plan."

[4] In evaluating a motion to dismiss, a court may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and any document "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations omitted).  Plaintiffs allege that they are entitled to retiree health benefits under the Plan.  Accordingly, the documents governing the Plan may properly be considered in evaluating this Motion.  *See Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, 273 (W.D.N.Y. 2006) (considering ERISA plan document on motion to dismiss, stating, "Although Plaintiff did not attach a copy of the Plan to his Complaint, he references the Plan therein, and it is clearly essential to this Court's analysis.").  Additionally, given that Plaintiffs repeatedly refer to their respective Employment and Separation Agreements in the Complaint, such Agreements may properly be considered in evaluating this Motion.  *Shaar Fund, Ltd.*, 493 F.3d at 98.

[5] EmblemHealth notes that the terms "retired" and "retiree," as used in this brief and in the Plan Documents, do not indicate that Plaintiffs voluntarily separated from employment with the Company.  Rather, with the exception of Plaintiffs Bluestein and Watson, the fact that a Plaintiff signed a Separation Agreement providing for severance benefits indicates that his or her employment was involuntarily terminated.

Nielsen Decl. ("Ex. W") § 13; Management Retiree Health and Welfare Plan (effective 1/1/15),

Exhibit X to Nielsen Decl. ("Ex. X") at 7, "Amendment or Termination of the Plan";

Management Retiree Health and Welfare Plan (effective 1/1/11), Exhibit Y to Nielsen Decl.

("Ex. Y") § 13.  Additionally, the descriptions for the "ConnectiCare Officer Retiree Medical

Benefits Program" and the "EmblemHealth Services Officer Retiree Health Program" provide

that each entity "retains the right *to amend or terminate the [program] for officers at any time, at*

*its sole discretion*, and upon action by its Board of Directors."  ConnectiCare Officer Retiree

Medical Benefits Program, updated March 4, 2009, Exhibit Z to Nielsen Decl., at 1 (emphasis

added); EmblemHealth Services Officer Retiree Health Benefits, updated April 9, 2010, Exhibit

AA to Nielsen Decl.[6]  Finally, the description of the benefits applicable "For Actively Employed

Senior Vice Presidents and Above ('Officers') Covered by an Employment Agreement that

Provides for Officer Retiree Health Benefits," cited in Am. Compl. ¶ 60, expressly notes that the

benefits provided "*are reviewed annually and revisions are periodically made*."  EmblemHealth

Services Officer Retiree Health Benefits, dated January 8, 2009, Ex. AB to Nielsen Decl., ("Ex.

AB") at 1 (emphasis added).

Prior to January 1, 2017, EmblemHealth provided major medical coverage to retired

officers pursuant to a Company-issued insurance or HMO contract.  *See* Ex. V § 3; Ex. W § 3;

---

[6] The Plan does not have one governing Plan Document, but rather comprises several SPDs that describe the benefits and features of the Plan.  In the absence of a single Plan Document, these SPDs collectively constitute the Plan Document.  *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002) (holding that "program summary" functioned as the plan document where it was the "only written document describing benefits"); *see also Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 346 (5th Cir. 2017) ("[W]hen an SPD is a plan's only plausible written instrument, courts assume that the SPD is the written instrument."); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) ("Where no other source of benefits exists, the summary plan description *is* the formal plan document, regardless of its label.") (citing *Feifer,* 306 F.3d at 1208–09) (Emphasis in original).

Ex. X at 2; Ex. Y § 3.  Effective January 1, 2017, however, the benefits available under the Plan were modified, such that insured major medical coverage was replaced with annual Company contributions to an HRA, in the amount of $6,000 for retirees not yet Medicare eligible, and $1,200 for Medicare-eligible retirees.  *See* Exs. A-U.  Retirees could use this money to purchase any health insurance coverage from any insurance provider.  *Id.*

## III.   STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept[] the factual allegations in a complaint as true and draw[] all reasonable inferences in the plaintiff's favor."  *Rafter v. Liddle*, 704 F. Supp. 2d 370, 374 (S.D.N.Y. 2010).  Importantly, however, the Court need not "accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007), *cert denied*, 552 U.S. 1291 (2008) (internal quotations omitted).  Additionally, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*

## IV.   ARGUMENT

### A.   Counts I-II Should Be Dismissed, Given That Plaintiffs' Retiree Health Benefits Are Not Vested

Count I of the Complaint – that EmblemHealth wrongfully modified Plaintiffs' retiree health benefits – must be dismissed because Plaintiffs have not, and cannot, point to any

language in any applicable Plan Documents or Separation or Employment Agreements that
establishes that their retiree health benefits are vested.

It is well-settled that plan sponsors are generally free under ERISA, "for any reason at
any time," to adopt, modify, or terminate health benefits. *Curtiss-Wright Corp. v.
Schoonejongen,* 514 U.S. 73, 78 (1995). In the absence of an explicit promise by an employer
that retiree health benefits will vest, an employer is free to terminate or modify such benefits at
any time. *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 133 (2d Cir. 1999); *Am. Fed'n of Grain
Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997) (retiree health
benefits only vest if an employer *promises* vested benefits).

The Supreme Court has held that where applicable plan documents or contracts are silent
as to the duration of retiree health benefits, a court may *not* infer that the parties intended the
benefits to vest for life. *Tackett*, 135 S. Ct. at 936 ("[C]ourts should not construe ambiguous
writings to create lifetime promises."). The Court reiterated *Tackett's* holding just last week,
when it applied *Tackett* to find that where a collective bargaining agreement ("CBA") was silent
as to the duration of retiree health benefits, such benefits ceased upon the expiration of the CBA.
*CNH Indus. N.V.*, 2018 WL 942419, at * 5 ("No provision specified that the health care benefits
were subject to a different durational clause. . . . If the parties meant to vest health care benefits
for life, they easily could have said so in the text. But they did not."). This is hardly surprising,
given that it is well-settled that "'where the words of a contract in writing are clear and
unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.'"
*Kelly v. Honeywell Int'l, Inc.*, 233 F. Supp. 3d 302, 310 (D. Conn. 2017) (quoting *Tackett*, 135 S.
Ct. at 933). Put another way, "[w]hen the intent of the parties is unambiguously expressed in the

contract, that expression controls, and the court's inquiry should proceed no further." *CNH Indus. N.V.*, 2018 WL 942419, at * 5 (quoting *Tackett*, *supra* (Ginsburg, J. concurring)).

Consistent with the Supreme Court's command in *Tackett*, the Second Circuit requires that a plaintiff claiming a vested right to benefits point to language in the governing plan document that is capable of being reasonably interpreted as creating a promise of vested benefits. *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 60 (2d Cir. 2006). This standard applies not only to summary judgment motions, *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 83 (2d Cir. 2001), but also to motions to dismiss. *See Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121, 128 (E.D.N.Y. 2000) (deciding motion to dismiss by evaluating whether language in operative agreements "could reasonably be interpreted as promising vested retiree benefits"). To satisfy the Second Circuit's strict standard, the document(s) in question must <u>affirmatively</u> operate to imply vesting. *Joyce*, 171 F.3d at 135; *Parillo v. FKI Indus., Inc.*, 608 F. Supp. 2d 264, 268 (D. Conn. 2009) ("[W]ithout any affirmative language resembling the 'lifetime' language found to create an ambiguity in *Devlin,* a promise to vest cannot be inferred from the Plan terms here.") (internal quotation marks and citation omitted).

1.    <u>The Plan Document Expressly Provides that Retiree Health Benefits May Be Amended or Terminated</u>

Plaintiffs do not – and cannot – allege that any language in the SPDs promises that retiree health benefits are vested. The reason why is simple:  the SPDs do not address the duration of how long retiree benefits will last. Given this silence as to the duration of benefits, the Court here may not infer that the parties intended retiree health benefits to vest. *Tackett*, 135 S. Ct. at 937.

Additionally, the SPDs all expressly provide, in Section 13, that "*EmblemHealth Services, as Plan Sponsor, has the right to* <u>*amend or terminate*</u> *the Plan at any time.* The Plan may be amended or terminated by a written instrument duly adopted by EmblemHealth Services or any of its delegates." (Emphasis added). Plaintiffs, in their Amended Complaint, do not acknowledge – let alone address – this reservation of rights language, and instead purport to hang their vesting claim on language in their Severance or Employment Agreements. But while Plaintiffs may run from the SPDs' reservation of rights language, they cannot hide from it. Indeed, courts have consistently held that this type of "reservation of rights" language is sufficient to defeat a claim that retiree health benefits are vested. *See, e.g.*, *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1085-86 (8th Cir. 2012) (retirees could not introduce extrinsic evidence where plan document did not contain language promising vested benefits and where employer expressly reserved the right to modify retiree benefits at any time); *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) (*en banc*) (no vesting where plan sets forth employer's reservation of rights to modify or terminate retiree benefits); *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 856 (4th Cir. 1994) (holding that reservation of rights clause alone was "more than sufficient" to defeat vesting claim).

Given that the terms of the Plan do not provide for vested retiree health benefits – and instead expressly acknowledge EmblemHealth's right to "amend or terminate the Plan at any time" – Plaintiffs' claim of vested retiree health benefits fails as a matter of law, and should be dismissed.

11

2.      The Summary Document Plaintiffs Cite Relating to Plaintiff Watson Expressly States that Benefits Are Subject to Modification

Plaintiffs also point, at Am. Compl. ¶ 60, to a document that summarizes the benefits available to Plaintiff Watson, dated January 8, 2009, which, according to Plaintiffs, does not contain reservation of rights language.  But this summary, which is attached as Exhibit AB to the Nielsen Declaration, not only refers the reader to the terms of the SPDs (which, of course, include reservation of rights language), but also notifies the reader – in the first paragraph – that retiree benefits "*are reviewed annually **and revisions are periodically made***."  In other words, the summary expressly notifies the reader that the retiree benefits described not only could change, but that they also *had* changed in the past.  Accordingly, there is no plausible basis to infer vesting.

3.      Plaintiffs' Severance And/Or Employment Agreements Cannot Establish Vested Benefits, Given EmblemHealth's Reservation of Rights In the SPDs

For virtually all Plaintiffs, the sole basis for alleging an entitlement to vested retiree health benefits is that they signed Separation Agreements with the Company that supposedly promised such benefits.  As stated in the Amended Complaint, "All Plaintiffs, except for Plaintiffs Bluestein and Watson, signed Separation Agreements that provided, as consideration, retiree health benefits."  Am. Compl. ¶ 45.[7]

Plaintiffs' attempt to establish vesting based on the terms of their respective Separation Agreements – rather than the terms of the Plan itself – is unavailing.  Indeed, at least one appellate court has held that vesting of retiree health benefits cannot be established by any

---

[7] In the Original Complaint, Plaintiffs alleged entitlement to lifetime retiree health benefits based on the terms of both their Employment and Severance Agreements.  In contrast, Amended Complaint ¶ 45 indicates that except for Plaintiffs Bluestein and Watson, Plaintiffs' vesting claims arise solely from the terms of their respective Separation Agreements.  But given that the Separation Agreements reference the Employment Agreements, the terms of such Employment Agreements are relevant to the Court's analysis of Plaintiffs' claims.

document *other than* a Plan Document or SPD.  *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 792-93 (8th Cir. 2002) (rejecting retirees' claim that vesting could be established based on words used in a benefits booklet, because the booklet was not an SPD).

Even where non-plan documents may be considered, many courts have rejected claims by retirees that they were offered – and accepted – independent employment or separation contracts guaranteeing them lifetime retiree health benefits where the contracts themselves had provisions that conflicted with governing plan documents or SPDs.  *See, e.g.*, *Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224, 231 (1st Cir. 2006) (promise of lifetime health benefits in an early retirement program document could not override the employer's reservation of rights clause set forth in plan documents); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 490, 492 (2d Cir. 1988) (no vesting of retiree health benefits where applicable SPDs contained reservation of rights language, even where booklets, filmstrips, presentations, articles in employee newsletters, and letters to participants either did not mention the company's reservation of rights, or described the benefits being offered as "lifetime" benefits); *Sprague*, 133 F.3d at 403 (rejecting retirees' claims based on signed "statements of acceptance" by which they agreed to retire and accept then-current retiree benefits, because the "statement of acceptance" did not amend the plan document in which the employer reserved its right to modify or terminate retiree benefits); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 637 (7th Cir. 2004) (employer that included reservation of rights language in the plan document permissibly modified retiree health benefits, even though documents describing the early retirement program described lifetime retiree benefits); *Stearns v. NCR Corp.*, 297 F.3d 706, 711-12 (8th Cir. 2002) (rejecting vesting claims of retirees who accepted early retirement in reliance on written releases they had signed that promised lifetime benefits).

Given that the SPDs at issue here expressly provide that EmblemHealth "has the right to amend or terminate the Plan at any time," nothing in Plaintiffs' Separation or Employment Agreements can be deemed to have created vested retiree health benefits. It follows, then, that Counts I and II should be dismissed.

4.      Nothing In the Separation And/Or Employment Agreements Creates Vested Retiree Health Benefits

Even if the Court considers Plaintiffs' Separation and/or Employment Agreements in evaluating Plaintiffs' claims, nothing in those Agreements promises Plaintiffs vested health benefits. To the contrary, the Agreements clearly demonstrate that retiree health benefits are *not* vested, and may be amended or terminated at any time.

The Separation and Employment Agreement of each named Plaintiff is attached hereto, as Exhibits AE-BU ("Ex. AC" to "Ex. BM") to the Nielsen Declaration.[8] Although the specific terms of each Separation Agreement differ in certain respects (given that the former executives held different positions and earned different pay), they all contain virtually identical language regarding health benefits. Using Plaintiff Abernethy's Separation Agreement as an example, it provides that Mr. Abernethy and his dependents "are also *eligible* for EmblemHealth Retiree Health Benefits at the same level as that provided an active EmblemHealth Service officer," provided certain criteria are met. Ex. AV to Nielsen Decl. § 1(b)(ii) (Emphasis added). But that language only provides that Mr. Abernethy – and the other Plaintiffs – are *eligible* for retiree health benefits that EmblemHealth offers; *it does not specify the duration of such benefits*. This

_____

[8] Plaintiffs Platt alleges, in Am. Compl., ¶ 26, that he signed a Separation Agreement that promised him vested retiree health benefits. A search of Company records, however, did not disclose any such agreement. Plaintiff Platt bears the burden of substantiating his claims of contractual entitlement to vested retiree health benefits, and, accordingly, must provide the Court with any agreement upon which he relies. This must be produced before any discovery commences, so that the Court may address the adequacy of the pleadings.

is fatal to Plaintiffs' claims, given the Supreme Court's decision in *Tackett*, which unequivocally

provides that where applicable plan documents or contracts are silent as to the duration of retiree

health benefits, a court may *not* infer that the parties intended the benefits to vest for life.

*Tackett*, 135 S. Ct. at 936.  *See also Danis v. Cultor Sci., Inc.*, 154 F. Supp. 2d 247, 256 (D.

Conn. 2001) ("Where an ERISA plan is silent as to vesting or reserves the employer's right to

amend or terminate benefits at any time, extrinsic evidence such as 'informal communications

between an employer and plan beneficiaries' cannot amend the plan to create a promise of vested

benefits 'absent a showing tantamount to proof of fraud.'") (*quoting Moore*, 856 F.2d at 492),

*abrogated on other grounds, Richards v. FleetBoston Fin. Corp.*, 2006 WL 2092086 (D. Conn.

Jul. 24, 2006).[9]

Although Plaintiffs *admit*, in Am. Compl. ¶ 48, that that their "right to continue to receive

retiree health benefits had *no fixed duration*," they nonetheless argue that it "was clearly

---

[9] For this reason, Plaintiffs' statement, in Am. Compl. ¶ 62, that discovery in this case will reveal
"hundreds, if not thousands, of other documents and communications . . . [that] will reflect that
the retiree health benefits promised to them were understood not to be subject to termination or
amendment[,]" – even if accepted as true – is immaterial.  The SPDs and the Separation and
Employment Agreements at issue here are silent as to the duration of the retiree health benefits,
which thus precludes any inference that such benefits were vested.  Additionally, the SPDs and
the Employment Agreements all expressly include reservation of rights language that provides
that the Company may, at any time, modify or terminate the benefits at issue.  And the
Separation Agreements upon which Plaintiffs hang their vesting claim all provide that any
benefits for which they are eligible are subject to the terms of the applicable Plan Documents, all
of which include reservation of rights language.  Accordingly, there can be no ambiguity as to
the meaning of the applicable documents, and, as such, reference to extrinsic evidence to
interpret the documents is not permitted.  *Tackett*, 135 S. Ct. at 938 (Ginsburg, J. concurring)
("When the intent of the parties is unambiguously expressed in the contract, that expression
controls, and the court's inquiry should proceed no further.  [Only] when the contract is
ambiguous[ ] [may] a court consider extrinsic evidence to determine the intentions of the
parties." (internal citations omitted).  *See also Senn v. United Dominion Indus., Inc.*, 951 F.2d
806, 816 (7th Cir. 1992) ("The mere silence of [CBAs] and plan documents concerning the
vestment of welfare benefits fails to give rise to an ambiguity.").

intended by all parties [that retiree health benefits would] last for the remainder of their lives[.]"
But Plaintiffs argument is foreclosed by *Tackett* and myriad other appellate court holdings:
where an applicable document is silent as to the duration of retiree health benefits, there can be
*no* inference of an intent to vest such benefits.  *See, e.g.*, *CNH Indus. N.V.*, 2018 WL 942419, at
*5 (when CBA did not specify the duration of retiree health benefits, such benefits ceased upon
expiration of the CBA); *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 135-36 (2d Cir 1999)
("We will not infer a binding obligation to vest benefits absent some language that itself
reasonably supports that interpretation. . . . [w]e believe that the SPD's reservation of rights
clause . . . precludes any viable claim that the SPD served to vest the retirees' benefits."); *Senn*,
951 F.2d at 816 ("The mere silence of [CBAs] and plan documents concerning the vestment of
welfare benefits fails to give rise to an ambiguity.  Rather, this silence . . . demonstrates[s] that
the signatories to the contract did not intend that a lifetime right to welfare benefits would vest in
retirees.").[10]

Additionally, *each* of the Separation Agreements at issue expressly provides that a
retiree's eligibility for benefits under the terms of any ERISA-governed plan is "governed
exclusively by" or "covered by" the terms of the Plan Document,[11] which, as detailed above,
retain EmblemHealth's right to modify or terminate the Plan (or any benefit thereunder) at any
time.  Put simply, Plaintiffs cannot plausibly allege the Separation Agreements at issue created

---

[10] Additionally, Plaintiff Vincent Scicchitano cannot claim that his Separation Agreement entitles
him to vested retiree health benefits, given that the parties specifically *struck out* the paragraph in
such Agreement that addressed retiree health benefits.  *See* Ex. BI, former § 1(b)(i).

[11] We note that while there are minor distinctions in the applicable language of the various
Separation Agreements, each agreement expressly provides that the Plan Document governs
eligibility for ERISA benefits.  *See., e.g.*, Exhibits AV § 1(c); AW § 1(c); and AX § 1(c) to
Nielsen Decl.

vested retiree health benefits when those Agreements expressly provide that any such benefits are subject to the terms of the applicable Plan – which, of course, itself contains reservation of rights language that allows the Company to modify or terminate such benefits in its discretion.

Nor is there anything in Plaintiffs' Employment Agreements that could be construed as giving rise to a promise of vested retiree health benefits. Indeed, *every* Employment Agreement contains language that *expressly* provides that any health or welfare benefits available to the individual at issue may be modified by the Company in its discretion. For example, the Employment Agreement of Plaintiff Anthony L. Watson – who alleges he is eligible for retiree benefits solely on the basis of his Employment Agreement – provides as follows:

> The Executive shall be entitled to participate in, and receive benefits under, any . . . health . . . benefit plan, program or policy of each EmblemHealth Company for which the Executive is performing services hereunder, which may be in effect at any time during the course of his employment by such company and which shall be generally available to executives of such company, ***subject to the terms of such plans, programs or policies,*** and without duplication. ***Notwithstanding the foregoing, such company may, in its discretion, at any time*** *and from time to time,* ***change or revoke <u>any</u> of its employee benefit plans***, programs or policies ***and the <u>Executive shall not be deemed, by virtue of this Agreement, to have any vested interest in any such plans, programs or policies</u>***.

Ex. AT § 5(a) (Emphasis added). Virtually identical language is used in *each and every* Employment Agreement between the Company and Plaintiffs. *See* Exs. AC-AU.[12] By their plain terms, then, the Employment Agreements do not promise retiree benefits for the duration of Plaintiffs' lives, or for so long as the Company provides health coverage to active retirees. To the contrary, the Employment Agreements are silent as to the duration of health benefits, and expressly note that the Plaintiff at issue "shall **not be deemed . . . to have any vested interest in**

---

[12] This language appears in either Section 4 or Section 5 of each Employment Agreement.

**any such plans, programs or policies**." (emphasis added).  It is hard to imagine *non*-vesting language that could be clearer.

The Employment Agreement further states that if Mr. Watson (or any other named Plaintiff) "retires under the Supplemental Executive Retirement Plan for EmblemHealth Services Company, LLC ('SERP') . . . [he] shall be entitled to receive retiree health coverage . . . for himself" and his eligible dependents, subject to certain conditions.[13]  Ex. AT § 5(b).  But nowhere in the Employment Agreement does it state that Mr. Watson will receive health coverage for the rest of his life, and as noted above, his Employment Agreement expressly notes that benefits may be changed by the Company, at any time, and that he "*shall not be deemed, by virtue of this [Employment] Agreement, to have any vested interest in any such [employee benefits] plans, programs, or policies*."  *Id.* at § 5(a).  This language concerning eligibility for benefits under the SERP carries over to every other Employment Agreement in which the issue is discussed, and is, again, fatal to Plaintiffs' vesting claim.

Given that Plaintiffs cannot point to language by which EmblemHealth unambiguously promised them retiree health benefits for the duration of their lives, they fail to state a claim for which relief can be granted.  Indeed, courts have not hesitated to reject vesting claims similar to those alleged by Plaintiffs.  *See, e.g.*, *Adams v. Tetley USA, Inc.*, 363 F. Supp. 2d 94, 104 (D.

---

[13] The Supplemental Executive Retirement Plan ("SERP") and the Supplemental Executive Retirement Plan II ("SERP II") are non-tax qualified retirement plans for senior executives of EmblemHealth.  Under the terms of some executives' employment agreements, if they become eligible for benefits under the SERP or SERP II, they also become eligible for retiree health benefits, provided certain conditions are met.  The Officer Retiree Health and Welfare Plan reiterates this eligibility structure in Section 4(A).  *See* Ex. V § 4(A); Ex. W § 4(A).  Because the Plan makes eligibility for retiree health benefits contingent upon "the terms of [the employment] agreement," and because the SERP and SERP II themselves do not confer any retiree health benefits, the employment agreements – and not the SERP or SERP II – are operative documents with respect to Plaintiffs' claims for benefits.  *Id*.

Conn. 2005) ("The fact that the plan could be read to promise benefits for an 'indefinite' period does not mean a promise of 'lifetime' benefits as a matter of law.  The absence of durational language in a plan document does not create a binding obligation to vest benefits."); *Peterson v. Windham Cmty. Mem'l Hosp., Inc.*, 803 F. Supp. 2d 96, 103-104 (D. Conn. 2011) (where SPD provided that retiree would be eligible for coverage after retirement, but also noted employer's right to modify or terminate the program, the employer acted permissibly in modifying retiree benefits, noting that a statement that retiree health benefits "will be provided" is not a promise of lifetime benefits); *Coriale v. Xerox Corp.*, 775 F. Supp. 2d 583, 595 (W.D.N.Y. 2011) (holding that retiree benefits were not vested where "Plan participants were informed from time to time that they would participate in Xerox's health plans for the rest of their lives, and that Xerox would provide coverage under those plans, *but they were not promised any particular level of coverage, nor did Xerox promise never to reduce benefits*.") (Emphasis in original).

Accordingly, Counts I and II of the Amended Complaint should be dismissed.

**B.**      **Even If Plaintiffs Had a Vested Right to Health Benefits, Their Breach of Fiduciary Duty Claim In Count II Fails**

Even if it is assumed, *arguendo*, that Plaintiffs could establish that the retiree health benefits at issue are vested, their breach of fiduciary duty claim in Count II should be dismissed.

1.      Plaintiffs Have Not Pled Facts to Support a Breach of Fiduciary Duty Claim

Count II is premised upon Plaintiffs' allegation that the Company "breached its fiduciary duties by misrepresenting and defrauding Plaintiffs and the Putative ERISA Class of their right to continued retiree health benefits."  Am. Compl. ¶ 129.  But Plaintiffs do not identify *any* "misleading" statements made by the Company prior to the benefit modification at issue that either induced them to separate from service, or which concerned the duration of retiree health benefits.  Further, Plaintiffs do not allege any facts – let alone with particularity – demonstrating

19

that the Company "defrauded" Plaintiffs with respect to the retiree health care benefits.[14]

Plaintiffs' failure to specifically identify the allegedly misleading statements requires dismissal.

*See, e.g.*, *Fisher*, 703 F. Supp. 2d at 387-88 ("Although plaintiffs clearly make reference to

summary plan descriptions issued within the Class Period, the fact remains that *the amended

complaint fails to identify any language that is purportedly materially misleading. . . .*

Accordingly, plaintiffs have failed to plead factual allegations sufficient to raise a right to relief

above the speculative level.") (citations omitted) (emphasis added).  Additionally, Plaintiffs have

not identified *who* at EmblemHealth made any statements that were "misleading," or that

"defrauded" Plaintiffs, and they have not alleged any facts indicating that any person who did so

was acting in a fiduciary capacity.  This deficiency in pleading also requires dismissal of

Plaintiffs' breach of fiduciary duty claim.  *Id.* at 388.[15]

     The closest Plaintiffs come to identifying an allegedly misleading statement is their

allegation, in Am. Compl. ¶ 68, that *after* the Company modified the retiree health benefits at

issue, the Company responded to inquiries by "rel[ying] on unrelated language in Plaintiffs'

agreements to claim that EmblemHealth had the right to unilaterally change the terms of such

agreements, even though no such right existed."  They also allege, in Am. Compl. ¶ 73, that "in a

letter to former employees justifying the termination of benefits, [the Company] omitted relevant

---

[14] *See Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) ("[W]hen the alleged breach of fiduciary duty *is* the fraudulent act, Plaintiffs are required to plead with particularity.").

[15] As stated in *Fisher*:  "[P]laintiffs have failed to allege which defendants, if any, who prepared the purportedly misleading SEC filings were acting as fiduciaries—i.e. performing fiduciary functions—when making those statements.  Indeed, other than the 2003 SEC filings, plaintiffs do not allege which SEC filings were materially misleading, much less the fact that the preparers of those documents were also acting in a fiduciary capacity with respect to the Plan.  Accordingly, plaintiffs have failed to plead factual allegations sufficient to raise a right to relief above the speculative level." (internal citations omitted).  *Id.* 703 F. Supp. 2d at 388.

language from the Separation Agreements that stated that severance benefits were excluded from coverage under an existing welfare benefit plan."  Putting aside that Plaintiffs do *not* identify which Plaintiffs (if any) made such inquiries, the date of the Company's alleged communications, or who, on behalf of Emblem, made such alleged statements – all of which are critical to establish a claim that can survive dismissal – Plaintiffs *admit* that such statements were made *after* the Company had modified the retiree health benefits, and related *only* to the Company's legal justifications for the modifications.  *See* Am. Compl. ¶¶ 68 and 73.  In other words, Plaintiffs do not identify *any* allegedly misleading statements made prior to the benefit change that either (a) induced them to separate from service or which (b) addressed the duration of the retiree health benefits at issue.  So even if Plaintiffs are correct that the Company made "misleading" statements *after* the benefit was changed regarding the permissibility of such change – which they are not – such statements could not have misled Plaintiffs into believing that they had vested benefits, or induced them to separate from service.

     2.    <u>The Relief Plaintiffs Seek In Count II Is Not Available Under the Alleged Facts</u>

ERISA Section 502(a)(3)  provides, in pertinent part, that a participant may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  (Emphasis added). The Supreme Court, in *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) , described ERISA Section 502(a)(3) "as a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] Section 502 does not elsewhere adequately remedy."

Importantly, *Varity* noted Section 502(a)(3)'s limited availability, stating that "where Congress elsewhere provided *adequate relief* for a beneficiary's *injury*, there will likely *be no need for further equitable relief*, in which case such relief normally would *not be appropriate*."

21

*Id.* at 515 (emphasis added).  "The *Varity* court thus emphasized that ERISA remedies are concerned with the adequacy of relief to address the claimant's injury, not the nature of the defendant's wrongdoing."  *Rochow v. Life Ins. Co. of N.A.*, 780 F.3d 364, 371 (6th Cir. 2015) (*en banc*).  Although the Second Circuit has allowed a complaint asserting claims under both ERISA Sections 502(a)(1)(B) and 502(a)(3) to survive a motion to dismiss, *see New York State Psychiatric Ass'n v. UnitedHealthGroup, Inc.*, 798 F.3d 125, 134 (2d Cir. 2015), it has done so only when "it is not clear[,] at the motion to dismiss stage of the litigation[,] that monetary benefits under Section 502(a)(1)(B) alone will provide [plaintiff] a sufficient remedy."  Here, there can be no such doubt.

a.      The Injunctive Relief Sought In Count II is Duplicative of Count I

The sole basis for Plaintiffs' lawsuit is that EmblemHealth modified their allegedly vested retiree health benefits by moving from an insured major medical arrangement to an HRA arrangement.  To that end, Plaintiffs, in Count I, seek "an order restoring the retiree health benefits of Plaintiffs . . . and clarifying Plaintiffs' . . . right to continued retiree health benefits." (Am. Compl. ¶ 127).  If Plaintiffs prevail on Count I, then the injuries they allege – the denial of major medical retiree health benefits retroactive to January 1, 2017 – will be adequately, and indeed, fully remedied by the relief they seek in Count I.  For that reason, one of the remedies Plaintiffs seek in Count II – "an injunction ordering the reinstatement of Plaintiffs' and the Putative ERISA Class's health benefits," *see* Am. Compl. ¶ 131(a) – is duplicative of what is sought in Count I.  Accordingly, the supposedly "equitable relief" they seek in Count II(a), is duplicative of the relief sought in Count I, and is, therefore, not an appropriate form of equitable relief.  *Varity*, 516 U.S. at 515.  *See also Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 14-cv-1835 (SJF)(AYS), 2016 WL 3676434, at *25 (E.D.N.Y. Jul. 7, 2016) (dismissing, on a motion to dismiss, plaintiff's ERISA Section 502(a)(3) claim where it was clear from the face of the

complaint that the relief sought was not equitable in nature, finding that: "[S]ince any harm to plaintiff can be entirely compensated by damages allowing her to recover the value of the death benefits allegedly wrongfully denied her by defendants, the amended complaint fails to state a plausible claim for [equitable] relief.").

> b.     Plaintiffs' Claims for "Lost Profits" Are Not Available Under ERISA Section 502(a)(3)

As for Plaintiffs' allegation in Count II that they are also entitled to "recovery of any profit obtained by EmblemHealth as a result of its breach of fiduciary duty," *see* Am. Compl. ¶ 131(b), that exact claim was rejected by the Sixth Circuit Court of Appeals, sitting *en banc*, in *Rochow*.  In *Rochow*, a participant asserted a wrongful denial of benefits claim under ERISA Section 502(a)(1)(B), and also sought – like Plaintiffs here – disgorgement of the profits that the insurer allegedly earned on the withheld benefits.  The *en banc* court squarely rejected the plaintiff's purported remedy, holding that:

> Rochow suffered the wrongful denial of his benefits, an injury adequately remedied under Section 502(a)(1)(B).   Despite Rochow's insistence to the contrary, his breach-of-fiduciary-duty claim for disgorgement of profits is nothing but a repackaged claim for benefits wrongfully denied, a claim for which, per *Varity*, additional equitable relief is not appropriate because [it is] not necessary to make Rochow whole. . . . The Court in *Varity* made clear that equitable relief is not ordinarily appropriate where Congress has provided adequate relief for claimant's injury.   The purpose behind ERISA continues to be remedial, and Rochow's injury was remedied when he was awarded the wrongfully denied benefits and attorney's fees—as potentially supplemented by award of prejudgment interest, still to be determined.

*Rochow*, 780 F.3d at 374-75.

Given that the sole injury that Plaintiffs allege is the modification of their retiree health benefits – which can be fully remedied by their reinstatement if the Court concludes they are owed by the Company – Plaintiffs' claim for "lost profits" is not available under Section 502(a)(3).

      c.     The Claim for "Ratification" of the Benefit Modification Is Improper

Plaintiffs next request, in Am. Compl. ¶ 131(c), "*ratification* of the termination of health benefits and recovery of any past and future profit obtained by EmblemHealth as a result of the breach."  (Emphasis added).  This is nothing short of bizarre:  Plaintiffs are asking the Court to "ratify" the Company's modification of retiree health benefits (the Company has not terminated such benefits), but then to find that the Company nonetheless breached its fiduciary duties in making the very modification that the Court ratified.  Plaintiffs' attempt to manufacture a fiduciary breach via a court order *ratifying* the Company's action is nothing less than astonishing, and demonstrates that this action has been brought in bad faith.  And even if not, the remedy Plaintiffs request following ratification – an award of "lost profits" – is foreclosed by *Rochow*.

      d.     Punitive Damages Are Not Available Under ERISA

Plaintiffs next allege, in Am Compl. ¶ 132, that they are entitled to "exemplary or punitive damages."  But it is black letter law that such damages are ***not*** available under ERISA. *See, e.g.*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) ("Section [502(a)(3)] permits money awards only in very limited circumstances.  Classic compensatory and punitive damages are never included within 'other appropriate equitable relief.'"); *Verdier v. Thalle Constr. Co., Inc.*, No. 14-cv-04436, 2017 WL 78512, at *7 (S.D.N.Y. Jan. 5, 2017) ("[P]unitive damages are not recoverable under ERISA."); *Zappier v. Sun Life Assur. Co. of Canada*, No. 05-cv-05300, 2006 WL 2621110, at *10 (S.D.N.Y. Aug. 10, 2006), report and recommendation adopted, No. 05-cv-05300, 2006 WL 2627967 (S.D.N.Y. Sept. 12, 2006) ("It is settled law . . . that punitive damages do not constitute equitable relief within the meaning of [Section 502(a)(3)]."); *Infantolino v. Joint Indus. Bd. of the Elec. Indus.*, No. 06-cv-00520, 2007 WL 879415, at *8 (E.D.N.Y. Mar. 15, 2007) ("Neither [Section 502(a)(1)(B) nor Section

24

502(a)(3)(B)] allows for punitive damages, which qualify neither as benefits due under the terms of the Plan, nor as equitable relief.").  Accordingly, this aspect of Count II should also be dismissed.

         e.      Plaintiffs Seek Money Damages—Not Equitable Relief

What Plaintiffs really seek in Count II is to hold the Company liable for its alleged breach of a supposed contractual obligation.  In other words, Plaintiffs seek legal relief (*i.e.*, money damages) – not equitable relief – which is the *sole* relief available under ERISA Section 502(a)(3).  As noted by the Supreme Court, "Almost invariably[,] suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 210 (2002).  "And money damages are, of course, the classic form of legal relief." *Id.* (emphasis added).  Accordingly, Count II of the Amended Complaint should be dismissed.

Further, courts examining facts similar to those at issue here have found that any form of "extracontractual" damage award is inappropriate.  For example, in *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002), the First Circuit held that plaintiffs who were wrongly terminated from a benefit plan could not recover the monetary value of plan coverage.  Instead, their only available remedy was reinstatement into the ERISA plan in question, and reimbursement for expenses the plaintiffs actually incurred that otherwise would have been covered by the plan. *Id.* Likewise, in *Zielinski v. Pabst Brewing Co., Inc.*, 360 F. Supp. 2d 908, 923 (E.D. Wis. 2005), the court held that retirees seeking "damages for premiums paid for replacement insurance" could not recover such amounts.  The court explained that "[d]amages for the premiums paid to obtain replacement insurance are not benefits due under the terms of the plan (thus, they are

extracontractual), nor are they equitable relief.  They are money damages—they are classic legal relief.  They are not available under ERISA." *Id.*  (internal citation omitted).  Accordingly, Count II of the Amended Complaint should be dismissed.

## C.    Plaintiffs' Claims Under New York Law Are Preempted

As an alternative to their ERISA claim, Plaintiffs also bring New York State law claims of breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), promissory estoppel (Count V), and a claim for violation of NYLL Section 193 (Count VI).  Each of these alternative counts is preempted by ERISA, and, accordingly, must be dismissed.

The Supreme Court has recognized that "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks and citation omitted).  Applying the Supreme Court's holding in *Davila*, the Second Circuit has held that ERISA preempts state law claims where "'(1) an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);' and (2) 'no other independent legal duty . . . is implicated by a defendant's actions.'"  *Arditi*, 676 F.3d at 299 (quoting *Davila*, 542 U.S. at 210).  Put another way, ERISA preempts those state law claims that seek "'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'"  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008)  (quoting *Davila*, 542 U.S. at 214). Here, there can be no dispute that both prongs of this test are satisfied.

*First*, Plaintiffs not only could have brought their claims under ERISA Section 502(a)(1)(B), but they did, in fact, assert exactly that ERISA claim in Count I of the Complaint,

as well as a breach of fiduciary duty claim in Count II, which is premised on the denial of retiree health benefits.

*Second*, "no other legal duty" is implicated by EmblemHealth's modification of the retiree health benefits at issue.  To the contrary, EmblemHealth's rights and obligations under the Plan at issue are "inextricably intertwined with the interpretation of [p]lan coverage and benefits," and thus "do not create a sufficiently independent duty under *Davila*."  *Arditi*, 676 F.3d at 299 (citation omitted).

The Second Circuit has unambiguously held that claims for breach of contract and breach of the implied covenant of good faith and fair dealing relating to denied benefits from an ERISA-covered plan – Counts III and IV of Plaintiffs' Complaint – are preempted.  *Paneccasio*, 532 F.3d at 114).  Likewise, the Second Circuit held that claims for promissory estoppel – Count IV of Plaintiffs' Complaint – are preempted.  *Gilbert*, 765 F.2d at 326-28, *aff'd*, 477 U.S. 901 (1986).  Accordingly, Counts III-V of Plaintiffs' Complaint should be dismissed, with prejudice.

As to Count VI of the Complaint, which alleges that the Company violated NYLL Section 193, that claim should also be dismissed given that:

- Plaintiffs are attempting to use a state law to challenge the benefits available to them under the retiree health plan at issue.  As discussed above, such an action is preempted, given that Plaintiffs can bring – and have brought – an ERISA Section 502(a)(1)(B) claim relating to their retiree health benefits.

- Additionally, the plain language of NYLL Section 193 makes clear that it is not in any way applicable to the facts at issue here.  Among other things, NYLL Section 193 provides that "[n]o employer shall make any deduction from the wages of an *employee*," unless such deductions are authorized in writing by the "employee" or

27

otherwise permitted by the statute.  (Emphasis added).  Plaintiffs, however, are not "employees" of EmblemHealth; they are *former* employees who ceased working for the Company years ago.

> o   Indeed, their own Complaint describes Plaintiffs as "retirees," and expressly disclaims that they are working for EmblemHealth.  *See, e.g.*, Am. Compl. ¶ 5 (stating that "all Plaintiffs [are] now *retired*"); ¶¶ 14-34 (describing each named Plaintiff as a "*former* employee" of EmblemHealth (or a related company).  (Emphasis added).

- Further, given their admitted status as former employees, EmblemHealth is not withholding any "wages" from Plaintiffs.  Indeed, Plaintiffs are not earning any "wages" from EmblemHealth from which deductions by the Company are even possible.

Accordingly, Counts III-VI should be dismissed, with prejudice.

## D.   <u>Plaintiffs Cannot Establish that the Elements of Class Certification Can Be Satisfied</u>

Although Plaintiffs have not moved for class certification, we note that such certification would be inappropriate.  Neither of the proposed putative classes can satisfy the requirements of Fed. R. Civ. P. 23.[16]  Under that rule, Plaintiffs must first demonstrate that each class meets all of the requirements of Rule 23(a), and must satisfy at least one of the requirements of Rule 23(b).  But Plaintiffs cannot satisfy either Rule 23(a) or Rule 23(b) because each of their claims depends on individualized proof – each putative Class Member's alleged injury will vary depending on

---

[16] Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that the proposed classes satisfy the requirements of Fed. R. Civ. P. 23.  *M.G. v. N.Y.C. Dep't of Educ.*, 162 F. Supp. 3d 216, 231 (S.D.N.Y. 2016) (citing *N.J. Carpenters Health Fund v. Rali Series 2006-Q31 Trust*, 477 F. App'x 809, 812 (2d Cir. 2012)).  Plaintiffs have not moved for class certification, and EmblemHealth reserves its rights to challenge any such motion.

his or her differing healthcare needs, and each putative Class Member's vesting claim will depend on his or her individual Employment and/or Separation agreement, and the circumstances surrounding their respective negotiation.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404, 412 (S.D.N.Y. 2016).  Accordingly, even if Plaintiffs had stated valid claims in this case – which they do not – they will not be able to establish that either of the putative classes they seek to certify meets the requirements of the Federal Rules of Civil Procedure.

## V.   CONCLUSION

For the foregoing reasons, EmblemHealth respectfully moves the Court to dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice.

The Company further moves for an award of its attorney fees under ERISA Section 502(g)(1) and as recognized by the Second Circuit.  *See, e.g.*, *Seitzman v. Sum Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 484 (2d Cir. 2002) (upholding district court's award of attorney fees to defendant, where plaintiff acted in bad faith in bringing meritless claim).  An award of attorney fees is particularly appropriate in this action because prior to the filing of the lawsuit, the Company engaged in extensive dialogue with Plaintiffs' counsel, advising counsel (and Plaintiffs) not only as to the lack of merit to the vesting claim, but also providing Plaintiffs' counsel with detailed authority establishing, among other things, that:

- The contract claims asserted in Counts III-V of the Amended Complaint (which mirror Counts II-V of the original Complaint) are preempted;

- The claims for monetary damages asserted in Count I of the original Complaint, and the demand for "exemplary," "punitive," and "extracontractual" damages now asserted in Count II of the Amended Complaint, are not authorized by ERISA; and

29

- ERISA does not authorize jury trials (as was demanded in the original Complaint).

EmblemHealth has incurred substantial legal fees defending against these frivolous claims, which Plaintiffs (and their counsel) knew were baseless before they filed this action. Put simply, Plaintiffs have acted in bad faith. An award of attorney fees to the Company is appropriate not only to only correct the financial harm inflicted upon EmblemHealth by Plaintiffs, but also to deter Plaintiffs (and their counsel) from engaging in such conduct in the future.

Additionally, given that the Plaintiffs are, by their own admission, former executives who "serv[ed] at the highest levels of the Company's management, Am. Compl. ¶ 4 – including as Company CEO, Chief Operating Officer, Chief Medical Officer, and General Counsel – they have the ability to satisfy an award of attorney fees, and there is no equitable basis to excuse them from their bad faith litigation.

/s/ Mark C. Nielsen
Mark C. Nielsen (MN4214)
Edward J. Meehan (*pro hac vice* forthcoming)
Sarah L. Martin (*pro hac vice*)
Stephen M. Pennartz (*pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-857-0620 (phone)
202-659-4503 (fax)
mnielsen@groom.com
emeehan@groom.com
smartin@groom.com
spennartz@groom.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on February 26, 2018, I filed in this action the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** electronically via the Court's ECF System.  Notice of this filing will be sent in this action by operation of the Court's electronic system to all counsel of record in the ECF System.

Respectfully Submitted,

*/s/ Mark C. Nielsen*
Mark C. Nielsen
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W.
Washington, D.C. 20006
202-861-5429 (phone)
202-659-4503 (fax)
mnielsen@groom.com

*Attorney for Defendants*