UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
DAVID ABERNETHY, et al.,

                    Plaintiffs,

                                17 Civ. 7814 (DAB)
                                **MEMORANDUM & ORDER**

      v.

EMBLEMHEALTH, INC., et al.,

                    Defendants.
--------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     In January of 2017, Defendant EmblemHealth, Inc.

("EmblemHealth") modified the group medical coverage it provided

to its retirees. Plaintiffs are twenty-one former employees of

EmblemHealth and its subsidiary, ConnectiCare, Inc. Plaintiffs

seek to enforce retiree health benefits provided by EmblemHealth

to its retirees as described in Separation Agreements and/or

Employment Agreements, as those plans existed prior to January

1, 2017. Plaintiffs assert claims for injunctive and declaratory

relief under §§ 502(a)(1) & (3) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1) &

(3), for other equitable relief under § 502(a), and for punitive

damages. In the alternative, if this Court were to find that the

Plaintiffs' and Defendants' agreements do not constitute ERISA

plans, Plaintiffs request damages for breach of contract, for

breach of the implied covenant of good faith and fair dealing,

and for violations of New York Labor Law § 193; Plaintiffs also assert that EmblemHealth was estopped from changing its retiree health benefits plan in the manner that it did.

Defendants filed the instant Motion to Dismiss all claims on February 26, 2018. <u>See</u> Docket Nos. 26, 27, 28. Plaintiffs submitted their opposition, <u>see</u> Docket Nos. 29, 30, and Defendants filed a reply, <u>see</u> Docket No. 35. For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## I.   BACKGROUND

The following facts are taken from the Amended Complaint and from documents cited by or referenced in the Amended Complaint. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (quoting <u>International Audiotext Network, Inc. v. American Tel. and Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995)) (finding that, for the purposes of Federal Rule of Civil Procedure 12(b)(6), a court may consider written instruments attached to the complaint, statements or documents incorporated into the complaint by reference, and even "integral" documents not incorporated by reference where the complaint relies heavily upon the integral documents' terms and effect). In this case, these documents include various plan documents, employment agreements, and separation agreements that most Plaintiffs entered into upon retirement.

2

Plaintiffs were employed in management positions at EmblemHealth and its subsidiaries for various lengths of time. They are now all retired. Am. Compl. ¶ 5. In a letter dated May 31, 2016, EmblemHealth notified Plaintiffs and similarly-situated officers that, effective January 1, 2017, EmblemHealth would no longer provide group retiree major medical coverage, but would rather provide retirees with the option to purchase subsidized individual insurance coverage. Am. Compl. ¶ 6; Nielsen Decl. Exs. A-U. Prior to 2017, EmblemHealth provided eligible retirees with medical coverage via an insurance or HMO contract. EmblemHealth's new plan established a Health Reimbursement Account ("HRA") to which it would contribute varying amounts from $1,200.00 to $6,000.00.

All Plaintiffs except for Paul Bluestein and Anthony Watson signed Separation Agreements promising them severance-related benefits. Am. Compl. ¶ 47. According to these Separation Agreements, if Plaintiffs paid coverage premiums and agreed to enroll in Medicare upon becoming eligible, EmblemHealth promised that these retirees "will be able to commence Retiree Health Benefits at the same level as that provided an active officer for you and your eligible dependents." Id. Plaintiffs allege that this promise of retiree health benefits to them and similarly-situated retired officers constitute an "employee

welfare benefit plan" as the term is defined in 29 U.S.C. §
1002. Am. Compl. ¶ 124.

Plaintiffs allege that Paul Bluestein signed an Employment
Agreement dated May 10, 2013 with ConnectiCare stating that he
would receive retiree health benefits under the same conditions
as was given to the other Plaintiffs. Am. Compl. ¶ 55.

Plaintiffs allege that Anthony Watson signed an Employment
Agreement dated January 1, 2009 that he "shall be entitled" to
receive retiree health coverage at the same level to the
coverage provided to active officers, provided that he paid the
same coverage premiums and registered for Medicare upon becoming
eligible. Am. Compl. ¶ 56.

Plaintiffs argue that the benefit modification effectuated
by Defendants on January 1, 2017 constituted a denial of
benefits, because the retiree health benefits promised to
Plaintiffs "were understood to not be subject to termination or
amendment once they retired." Am. Compl. ¶ 62.

Plaintiffs allege the third, fourth, fifth, and sixth
causes of action (listed above) in the alternative, in the event
that this Court does not deem Plaintiffs' separation and/or
retirement agreements with EmblemHealth to be plans recognized
under ERISA. Am. Compl. ¶¶ 98, 134-152.

In support of the Motion to Dismiss, Defendants have
submitted complete Summary Plan Descriptions ("SPDs") for the

4

Court's review. <u>See</u> Nielsen Decl. Exs. V-Y. Defendants also submitted the Employment Agreements of Plaintiffs Bluestein and Watson. Nielsen Decl. Exs. AE, AT. The SPDs reserve the right of EmblemHealth as Plan Sponsor to "amend or terminate" the Plan at any time, via a written instrument duly adopted by EmblemHealth or its delegates. <u>See, e.g.</u>, Nielsen Decl. Ex. Y § 13, page 10; Defs. Mot. to Dismiss at 6-7. Plaintiff Bluestein's Employment Agreement provides, in relevant part, that "The Executive shall be entitled to participate in, and receive benefits under, any . . . retiree health . . . or other employee benefit plan . . . ConnectiCare and EmblemHealth may, in its discretion, at any time and from time to time, change or revoke any of its employee benefit plans, programs or policies and the Executive shall not be deemed, by virtue of this Agreement, to have any vested interest in any such plans, programs or policies." Nielsen Decl. Ex. AE § 5, pages 5-6. Plaintiff Watson's Employment Agreement is substantially the same as Bluestein's. <u>See</u> Nielsen Decl. Ex. AT § 5, pages 6-7 ("[S]uch company may, in its discretion, at any time and from time to time, change or revoke any of its employee benefit plans, programs, or policies and the Executive shall not be deemed, by virtue of this Agreement, to have any vested interest in any such plans, programs or policies.")


II.  Standard for a Motion to Dismiss

For a claim to survive a motion brought pursuant to
Fed.R.Civ.Pro. 12(b)(6), the party advancing it must have
pleaded "enough facts to state a claim to relief that is
plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 570 (2007). "A claim has facial plausibility," the Supreme
Court has explained,

> when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. The
> plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility
> of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
550 U.S. at 556-57). "[A] plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Twombly, 550 U.S. at 555 (internal
quotation marks omitted). "In keeping with these principles,"
the Supreme Court stated,

> [A] court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they
> are no more than conclusions, are not entitled to the
> assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-
> pleaded factual allegations, a court should assume

6

> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Gerdau Ameristeel U.S. Inc. v. Ameron Int'l Corp., No. 13-CV-7169, 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014) ("Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint.") (citations omitted). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court accept as true a legal conclusion couched as a factual allegation. Id.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).) Additionally, "[w]here a document is

7

not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id. (internal quotation marks omitted).

III. Analysis

A. Vesting of the Welfare Plan under ERISA

EmblemHealth's employee benefit plan involves life insurance and is therefore classified as a "welfare plan" under ERISA. See 29 U.S.C.A. § 1002(1). Unlike benefits provided under pension plans – a different type of plan recognized under ERISA – benefits provided by a welfare plan "generally are not vested and an employer can amend or terminate a welfare plan at any time." American Fed'n of Grain Millers, AFL—CIO v. International Multifoods Corp., 116 F.3d 976, 979 (2d Cir. 1997) (internal citations omitted). The Second Circuit rejects an automatic vesting theory for welfare benefit plans because the costs of such plans "are subject to fluctuating and unpredictable variables." Id. (quoting Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir.1988). Plans that provide welfare benefits to retirees follows the same reasoning. Id. (citing Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. at 75, 78 ("ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits.

8

Employers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." (internal citations omitted)).

However, if an employer promises vested benefits to plan participants or beneficiaries, that promise will be enforced. See 29 U.S.C. § 1132(a)(1)(B) (stating that an ERISA plan beneficiary/participant may sue to recover benefits due to them under the terms of the plan, to enforce rights under the plan, or to clarify rights to future benefits under the plan). The Second Circuit has stated that if an SPD unambiguously indicates whether retiree benefits are vested, the unambiguous language should be enforced. International Multifoods Corp., 116 F.3d 976 at 980.

Plaintiffs argue that all Plaintiffs except Bluestein and Watson signed Separation Agreements that provided that they "will be able to commence Retiree Health Benefits at the same level as that provided an active officer for you and your eligible dependents, provided that you pay the same amount of premium for such coverage as is paid by an executive then employed by EmblemHealth for the same level of benefits . . ." Am. Compl. ¶ 47 (emphasis in Amended Complaint). Plaintiffs argue that their right to receive retiree health benefits "had no fixed duration, and thus was clearly intended by all parties

to last for the remainder of their lives, provided that they satisfied the conditions[.]" Am. Compl. ¶ 48.

Defendants note that each of the Separation Agreements at issue expressly provide that a retiree's eligibility for benefits under the terms of any ERISA plan is "governed exclusively by" or "covered by" the terms of the applicable plan document. Defs. Mot. to Dismiss at 16; see, e.g. Nielsen Decl. Ex. AW § 1(c). The applicable SPDs reserve "the right to amend or terminate the Plan at any time." See Nielsen Decl. Ex. V-Y § 13.

Plaintiffs (except Bluestein and Watson) also signed Employment Agreements promising that they "shall be entitled to participate in, and receive benefits under, any . . . employee benefit plan . . . which may be in effect at any time during the course of [their] employment[.]" See, e.g., Nielsen. Decl. Ex. AD § 5, pages 6-7; Am. Compl. ¶ 52. The paragraph continues, "[n]otwithstanding the foregoing, such company may, in its discretion, at any time and from time to time, change or revoke any of its employee benefit plans, programs, or policies and the Executive shall not be deemed, by virtue of this Agreement, to have any vested in any such plans, programs or policies." Id. Plaintiffs argue that their Separation and/or Employment Agreements promised vested benefits to Plaintiffs on the same terms as benefits provided to active officers; Defendants argue

that all documents referred participants back to their applicable SPD, which explicitly reserved the right to amend or terminate the plan at any time.

This Court concludes that the language cited by Plaintiffs did not create a vested right to retiree benefits on the same terms as active officers. The language of the Separation Agreements, Employment Agreements, and SPDs unambiguously indicated that the retiree benefits were not vested. That unambiguous language should be enforced. See International Multifoods Corp., 116 F.3d 976 at 980.

Likewise, the Supreme Court's decision in M & G Polymers USA, LLC v. Tackett, 135 S.Ct. 926, clarifies that a court should not infer an intention to vest benefits for life in the absence of express language. See Tackett, 135 S.Ct. 926, 936-7, citing Sprague v. General Motors Corp., 133 F.3d 388, 400 (C.A.6 1998) ("Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest must be found in the plan documents and must be stated in clear and express language" (internal quotation marks omitted)). Plaintiffs admit that their "right to continue to receive retiree health benefits had no fixed duration." Am. Compl. ¶ 48. This Court declines to find that such benefits were vested in the absence of constituting an intent to vest. At the very least, Plaintiffs must "point to

11

written language capable of reasonably being interpreted as
creating a promise on the part of [the employer] to vest [the
retiree's] . . . benefits," and Plaintiffs have not satisfied
that burden. Multifoods, 116 F.3d at 980 (quoting Schonholz, 87
F.3d at 78 (2d Cir. 1996); see Joyce v. Curtiss-Wright Corp.,
171 F.3d 130, 133-5 (2d Cir. 1999)). The language that
Plaintiffs identify as potentially ambiguous is adequately
explained by other language cited in the documents; any
potential ambiguity is repaired by reservation clauses in the
contracts. See Nielsen Decl. Ex. V-Y § 13 (SPD language reserves
"the right to amend or terminate the Plan at any time").
Plaintiffs' Separation and/or Employment Agreements refer back
to their applicable SPDs.

Accordingly, Counts One and Two requesting injunctive and
declaratory relief under §§ 502(a)(1) & (3) and other
appropriate equitable relief under § 502(a) are both DISMISSED.


B. Promissory Estoppel and Claims in the Alternative

Principles of promissory estoppel can apply in ERISA cases
under "extraordinary circumstances." Schonholz v. Long Island
Jewish Medical Center, 87 F.3d 72, 78 (2d Cir. 1996) (citing Lee
v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993). To succeed on a
claim of promissory estoppel, a plaintiff must satisfy four
elements: (1) a promise; (2) reliance on the promise; (3) injury

caused by the reliance; and (4) an injustice if the promise is not enforced. Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 151 (2d Cir.1999). The promise must be one that the promisor "should have expected to induce action or forbearance." Schonholz, 87 F.3d at 79. In addition, "an ERISA plaintiff must 'adduce [ ] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" Id. (quoting Devlin v. Transp. Comms. Int'l Union, 173 F.3d 94, 102 (2d Cir.1999)). These "extraordinary circumstances" are necessary "to lessen the danger that commonplace communications will routinely be claimed to give rise to employees' rights beyond those contained in the formal benefit plans." Id.

Plaintiffs have not identified any promises provided to them other than the language expressed in the SPDs, Employment Agreements, and Separation Agreements, which have already been analyzed by this Court. See Am. Compl. ¶¶ 144-7. There are no allegations by Plaintiffs of additional language, oral or in writing, that may constitute a promise or misrepresentation by Defendants. Plaintiffs have not pointed to any "extraordinary circumstances" approaching those found in Schonholz or Devlin; consequently, we decline to recognize a viable promissory estoppel claim.

Plaintiffs' other claims brought in the alternative – damages for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for violations of New York Labor Law § 193 – fail, because they are pre-empted by ERISA. <u>See</u> 29 U.S.C. § 1144(a) (ERISA supersedes "any and all State laws insofar as they relate to any employee benefit plan"); <u>see</u> <u>Arditi v. Lighthouse Intern.</u>, 676 F.3d 294 (2d Cir. 2012) (breach of contract claim preempted by ERISA); <u>see</u> <u>Paneccasio v. Unisource Worldwide, Inc.</u>, 532 F.3d 101 (2d Cir. 2008) (breach of the implied covenant of good faith and fair dealing preempted by ERISA).

Plaintiffs' claim for alleged violations of New York Labor Law § 193 fails, because (1) Plaintiffs are no longer employees of Defendants and (2) New York Labor Law § 193 is preempted by ERISA. To establish a "uniform regulatory regime over employee benefit plans," ERISA includes expansive pre-emption provisions. <u>Aetna Health Inc. v. Davila</u>, 542 U.S. at 208, 124 S.Ct. 2488. ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 514(a), 29 U.S.C. § 1144(a). Under the test outlined by the Supreme Court in <u>Davila</u>, ERISA preempts a state cause of action where "an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B)" and "no other independent legal duty . . . is implicated by a defendant's actions."

14

<u>Davila</u>, 542 U.S. at 210; <u>see</u> <u>Montefiore Med. Ctr. v. Teamsters</u> <u>Local 272</u>, 642 F.3d 321, 328 (2d Cir. 2011) (applying <u>Davila</u>). Plaintiffs could have brought this claim under ERISA – indeed, they did. Plaintiffs are Plan participants seeking benefits under their respective Plans. Plaintiffs claims "implicate coverage and benefits established by the terms of the ERISA . . . plan," and "can be construed as ... colorable claim[s] for benefits pursuant to § 502(a)(1)(B)." <u>See</u> <u>Arditi</u>, 676 F.3d at 299 (citing <u>Montefiore</u>, 642 F.3d at 328). <u>Davila</u>'s second requirement is also satisfied, because the parties' obligations under the Plan are "inextricably intertwined with the interpretation of Plan coverage and benefits" and "[do] not create a sufficiently independent duty under <u>Davila</u>." <u>Arditi</u>, 676 F.3d at 299 (citing <u>Montefiore</u>, 642 F.3d at 332).

Accordingly, Counts Three, Four, Five and Six are DISMISSED.

### C.    Leave to Amend

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. <u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 491 (2d Cir. 2011). In this case, leave to amend would

be futile, because fresh allegations could not repair the defects in the Amended Complaint. Accordingly, leave to amend is DENIED.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. The Clerk is directed to close the docket in this case.

SO ORDERED.

DATED:     New York, NY
           January 15, 2019

Deborah A. Batts
United States District Judge

16