**MANDATE**

N.Y.S.D. Case # 17-cv-7814(DAB)

19-422
*Abernethy v. EmblemHealth, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand nineteen.

PRESENT: DENNIS JACOBS
ROBERT D. SACK
PETER W. HALL

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 12 2019

DAVID ABERNETHY, FRED BLICKMAN, DOMINIC D'ADAMO, MARILYN DEQUATRO, THOMAS DWYER, MICHAEL FULLWOOD, PHILIP GANDOLFO, MICHAEL HERBERT, STEVEN KESSLER, DENNIS LIOTTA, DANIEL MCGOWAN, RONALD PLATT, ARAN RON, VINCENT SCICCHITANO, JOHN STEBER, LESLIE STRASSBERG, PEDRO VILLALBA, ANTHONY WATSON, MARC WOLFERT, on behalf of themselves and all other similarly situated individuals,
*Plaintiffs-Appellants,*
PAUL BLUESTEIN, ROBERT BRANCHINI, JAMES GREENIDGE, JOAN RUBY, ARAKSI SARAFIAN, on behalf of themselves and all other similarly situated individuals,
*Plaintiffs,*

v.  No. 19-422

EMBLEMHEALTH, INC., EMBLEMHEALTH SERVICES COMPANY, LLC, CONNECTICARE, INC.,
*Defendants-Appellees.\**

---

*The Clerk of Court is respectfully requested to amend the caption as stated above.

1

**MANDATE ISSUED ON 11/12/2019**

| | |
|---|---|
| FOR APPELLANTS: | RENAN F. VARGHESE (Bryan L Arbeit, *on the brief*), Wigdor LLP, New York, NY. |
| FOR APPELLEES: | MARK C. NIELSEN (Edward J. Meehan, Sarah L. Martin, Stephen M. Pennartz, *on the brief*), Groom Law Group, Washington, DC. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED IN PART** and **VACATED IN PART**.

Appellants are retired officers of EmblemHealth, Inc., EmblemHealth Services Company, LLC, and ConnectiCare, Inc. (collectively, "EmblemHealth" or "Defendants"), whose retiree health benefits were unilaterally modified. The United States District Court for the Southern District of New York (Batts, *J.*) dismissed all of their claims under Fed. R. Civ. P. 12(b)(6), including claims under the Employee Retirement Income Security Act ("ERISA") and state law claims. We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision.

The following facts are drawn from the allegations in the amended complaint ("Complaint") and from documents integral to the Complaint.[1]  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Appellants were officers at EmblemHealth who retired between 2008 and 2013.

---

[1] The parties dispute whether the summary plan descriptions are "integral to the complaint." None of the facts recited here is taken from the summary plan descriptions.

All except Watson signed separation agreements that provided, as consideration, severance-related benefits, including that Appellants would "be able to commence Retiree Health Benefits at the same level as that provided an active officer." J. App. 21 (Complaint ¶ 47); *see, e.g.*, *id.* at 502 (Abernethy Separation Agreement).[2] Almost all Appellants, including Watson, also signed employment agreements that promised severance-related benefits, including retiree health benefits "at the same level as that provided an active officer." *Id.* at 23 (Complaint ¶ 56); *id.* at 25 (Complaint ¶ 63); *see, e.g.*, *id.* at 145 (Abernethy Employment Agreement). In 2016, EmblemHealth terminated its group retiree major medical coverage, notwithstanding that current benefits continued for active officers, and announced that as of 2017, Appellants would instead have the option to purchase individual subsidized insurance coverage.

Appellants brought ERISA claims for denial of benefits and breach of fiduciary duty and, in the alternative, state law claims under New York law, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and violations of New York Labor Law § 193. Each of their claims was dismissed under 12(b)(6). The ERISA claims were dismissed on the ground that the relevant agreements and summary plan descriptions did not create a vested right to retiree benefits on the same terms as active officers; the promissory estoppel claim failed because Appellants did not identify any promises made to them other than those expressed in the relevant agreements and

---

[2] These agreements provided that Appellants would receive retiree health benefits at active officer levels on the conditions that they "pay the same amount of premium for such coverage as is paid by an executive then employed by EmblemHealth for the same level of benefits" and enroll in Medicare "upon becoming Medicare eligible." J. App. 21 (Complaint ¶ 47). It is undisputed that Appellants have met those criteria.

3

summary plan descriptions; the claim for violations of New York Labor Law § 193 failed because Appellants were no longer employees of EmblemHealth; and the contractual claims were deemed preempted by ERISA.

We affirm the portion of the District Court's judgment dismissing Appellants' claims based on ERISA, promissory estoppel, and New York Labor Law § 193,[3] but vacate the portion dismissing their claims for breach of contract (Count III) and breach of the implied covenant of good faith and fair dealing (Count IV)—and remand those claims to the District Court for further proceedings.

"We review *de novo* a grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 156–57 (2d Cir. 2017) (internal quotation marks omitted). We consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference," facts that can be judicially noticed, and documents "integral" to the complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alterations and internal quotation marks omitted). "We review *de novo* a district court's application of preemption principles." *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011).

Appellants argue that the dismissal of their ERISA denial of benefits claim (Count I) was error because (A) the District Court improperly considered certain summary plan

---

[3] Appellants do not challenge the District Court's bases for dismissing their promissory estoppel claim and their claim for violations of New York Labor Law § 193. Accordingly, we need not address them. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

4

descriptions ("SPDs"), and (B) the separation agreements and employment agreements can reasonably be interpreted to promise vested retiree health benefits. We address these arguments in turn.

The employment and separation agreements provide that eligibility for retiree health benefits is governed by the applicable plan documents. The only plan documents in the record are seven SPDs. We agree with Appellants that the District Court should not have considered four of them (the more comprehensive SPDs) because they were created after Appellants retired or apply to non-officers.[4] These SPDs are irrelevant to whether Appellants were promised vested benefits. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (agreeing with the plaintiff that "the amendment to the SPD granting discretionary authority to the Plan Administrator does not apply to [the plaintiff's] claim because his right to disability benefits vested prior to CIGNA's amendment of the Plan").

However, the District Court's erroneous reliance on these SPDs does not require vacatur because the claim to vested benefits is based on language in the employment and separation agreements, not any applicable plan document, and neither the employment nor separation agreements can be reasonably interpreted as promising vested benefits for life. Although "[e]mployers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," promises to vest benefits for life are enforceable. *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 82 (2d Cir. 2001). A plaintiff asserting a

---

[4] Appellants press this argument because these SPDs expressly reserve to EmblemHealth "the right to amend or terminate" the plan at any time, which undermines Appellants' vesting argument. J. App. 71, 88, 103, 119.

denial of vested benefits under ERISA need not show unambiguous language indicating an intent to vest those benefits.  *Id.* at 83.

> In this Circuit, to reach a trier of fact, an employee does not have to "point to unambiguous language to support a claim.  It is enough to point to written language capable of reasonably being interpreted as creating a promise on the part of the employer to vest the recipient's benefits."

*Id.* (quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cir. 1997)) (alterations and emphasis omitted).  "Our standard permits a plaintiff to get to a trier of fact based on ambiguous plan language."  *Devlin*, 274 F.3d at 83.[5]

Here, each employment agreement provides that the employee "shall be entitled to participate in, and receive benefits under" any retiree health benefit plan provided by his or her EmblemHealth employer, "subject to the terms of such plans, program or policies."  J. App. 144.  The next sentence clarifies:

> Notwithstanding the foregoing, such company may, in its discretion, at any time and from time to time, change or revoke any of its employee benefit plans, programs or policies and the [employee] shall not be deemed, by virtue of this Agreement, to have any vested interest in any such plans, programs or policies.

*Id.* at 144–45.[6]  Because the employment agreements unambiguously reserve to EmblemHealth the right to amend or terminate the retiree health plan at issue, the

---

[5] Appellants contend that the District Court erroneously applied a heightened standard that we rejected in *Devlin*, asserting that the District Court "implicitly found that this Court's precedent . . . was overruled" by the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015).  Appellant Br. 26.  We disagree.  The District Court determined, before discussing *Tackett*, that Appellants' benefits were not vested because "[t]he language of the Separation Agreements, Employment Agreements, and SPDs unambiguously indicated that the retiree benefits were not vested."  Sp. App. 11.  The District Court thus applied the *Devlin* standard, reasoning that Appellants failed to meet that standard because they could not "point to written language *capable of reasonably being interpreted* as creating a promise on the part of the employer to vest the retiree's benefits."  *Id.* at 12 (quoting *Multifoods*, 116 F.3d at 980) (alterations omitted).
[6] The other Appellants' employment agreements contain identical provisions.

6

employment agreements cannot reasonably be interpreted as promising to vest retiree health benefits. *Abbruscato v. Empire Blue Cross & Blue Shield*, 274 F.3d 90, 98-99 (2d Cir. 2001).

Nor can the separation agreements be reasonably interpreted to promise vested retiree benefits. Appellants point to the following provision, which appears in most of them:

> At the conclusion of the Health Benefits Continuation Period, you will be able to commence Retiree Health Benefits at the same level as that provided an active officer for you and your eligible dependents, provided that you pay the same amount of premium for such coverage as is paid by an executive then employed by EmblemHealth for the same level of benefits, and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage.

J. App. 21, 502, 520, 547, 562, 577, 590, 616, 682, 697, 712; *see also id.* at 21 (Complaint ¶ 47), 603, 631.[7]

The statement that "you will be able to commence Retiree Health Benefits . . ." is not reasonably capable of being interpreted as promising vested benefits. Cases in which an intent to vest has been found relied on more categorical wording. In *Devlin*, the SPDs provided that "retired employees, after completion of twenty years of full-time permanent service and at least age 55 *will be insured*" and that that the benefits "will remain at [the annual salary level] *for the remainder of their lives*." 274 F.3d at 84-85 (quoting SPDs). Similarly, in *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173 (2d Cir. 2019), benefits were held to have vested based on the "affirmative lifetime language" in an agreement that promised that "[a]ll past and future retired employees and surviving spouses shall continue to receive . . . full medical

---

[7] The five separation agreements that do not contain that provision have less language to support the assertion of vested benefits.

7

coverage . . . for the life of the retiree or surviving spouse." *Id.* at 180 (alterations in original) (internal quotation marks omitted).

Here, in contrast, the separation agreements made no promise as to the specific type of retiree health coverage that Appellants would receive nor as to the duration of coverage. Promising that retirees "will be insured" (indefinitely) upon completing twenty-five years of service creates ambiguity as to vesting, but promising that retirees "will be able to commence" certain benefits does not. This conclusion is reinforced by the separation agreements' qualification that eligibility for retiree health benefits "are subject to the terms and conditions of each applicable Health Benefit plan *as may exist or change* for similarly situated employees of EmblemHealth *from time to time.*" J. App. 503 (emphases added); *see also id.* 521, 534-35, 547-48, 562-63, 578, 591, 604, 617, 631, 658, 671, 682-83, 698, 713, 725.[8]

Because Appellants have identified no language in the employment agreements, separation agreements, or applicable SPDs that is reasonably capable of being interpreted as promising vested benefits, Appellants fail to state an ERISA claim for denial of benefits (Count I). Appellants' breach of fiduciary duty claim (Count II) fails for the same reason as they concede that it rises or falls with their denial of benefits claim. *See* Appellant Br. 32 ("[T]he breach of fiduciary duty claim should be reinstated based on the reasons set forth above [with respect to the denial of benefits claim].").

\* \* \*

---

[8] The one SPD that Appellants concede is applicable to at least some Appellants—"EmblemHealth Services Officer Retiree Health Benefits," effective January 8, 2009—likewise states that "revisions are periodically made" to the retiree medical benefits. J. App. 134.

8

We agree with Appellants, however, that the District Court erred in ruling that their contractual claims are preempted by ERISA. "To establish a 'uniform regulatory regime over employee benefit plans,' and 'to ensure that employee benefit plan regulation is exclusively a federal concern,' ERISA includes expansive pre-emption provisions." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). Under the Supreme Court's two-part test as set forth in *Davila*, ERISA preempts a cause of action if (1) "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B);" and (2) "no other independent legal duty . . . is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see also Arditi*, 676 F.3d at 299. Here, the contractual claims are not preempted because they derive from an independent legal duty—a contractual right to parity with EmblemHealth's active officers—as opposed to a particular benefit plan.

*Stevenson v. Bank of New York Co.* is instructive. 609 F.3d 56 (2d Cir. 2010). In that case, an employee's breach of contract claim for pension benefits was not preempted because it was based on the defendant-company's "separate promise" to maintain his benefits while he left to work for a Swiss affiliate, notwithstanding that beneficiaries would typically lose coverage upon leaving their employment with the defendant-company. *Id.* at 60–61. Here, Appellants concede that EmblemHealth may terminate their retiree healthcare benefits at any time, provided that it also terminate the active officers' healthcare coverage. *See* Reply Br. 2 ("Defendants only had the right to change or cancel the benefits given to active officers. In that circumstance and that circumstance alone would they have the ability to (indirectly) change or cancel the benefits provided to Plaintiffs."). Therefore, as in

9

*Stevenson*, Appellants' claims derive from a separate promise to confer a benefit to which they were not otherwise entitled, namely, the right to parity with the active officers. *See id.* ("[T]here is absolutely no language in any applicable document that provides Defendants with the ability to cancel the retiree health benefits given to Plaintiffs without making a corresponding change in the benefits given to active officers. That they did so anyway is the basis for Plaintiffs' claims in this case.").

The District Court incorrectly reasoned that "the parties' obligations under the Plan are 'inextricably intertwined with the interpretation of Plan coverage and benefits.'" Sp. App. 15 (quoting *Arditi*, 676 F.3d at 299). As discussed above, the contractual claims are not grounded upon "obligations under the Plan"; they are instead derived from a separate promise in the employment and separation agreements. Accordingly, "[w]hatever rights [Appellants] had arose not from the [benefit] plan, but from the independent agreement[s] that gave [them] benefits even though [they] had no right to them under the plan." *Arditi*, 676 F.3d at 300 (summarizing *Stevenson*).[9]

Of course, whether the cited contractual language supports Appellants' breach claims is a separate question which the District Court may need to decide. For now, we only decide that Appellants' contractual claims are not preempted by ERISA.

---

[9] *Arditi*, which the District Court relied on, is inapposite. There, we rejected an employee's reliance on *Stevenson* because his employment agreement "merely described the benefits [he] would receive as a Plan member; it made no promises of benefits separate and independent from the benefits under the Plan." 676 F.3d at 301.

10

We have considered all of the Appellants' remaining arguments and have found them to be without merit. Accordingly, we **AFFIRM IN PART** and **VACATE IN PART** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11