**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

| | |
|---|---|
| DAVID ABERNETHY, FRED BLICKMAN, DOMINIC D'ADAMO, MARILYN DEQUATRO, THOMAS DWYER, MICHAEL FULLWOOD, PHILIP GANDOLFO, MICHAEL HERBERT, STEVEN KESSLER, DENNIS LIOTTA, DANIEL MCGOWAN, RONALD PLATT, ARAN RON, VINCENT SCICCHITANO, JOHN STEBER, LESLIE STRASSBERG, PEDRO VILLALBA, ANTHONY WATSON and MARC WOLFERT, on behalf of themselves and all other similarly-situated individuals, | Civil Action No. 17-cv-7814 (KPF) <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| EMBLEMHEALTH, INC., EMBLEMHEALTH SERVICES COMPANY, LLC and CONNECTICARE, INC., | |
| Defendants. | |

-------------------------------------------------------------------X

Plaintiffs, by and through undersigned counsel, Wigdor LLP, and on behalf of themselves and all other similarly situated retired officers of Defendants EmblemHealth, Inc., EmblemHealth Services Company, LLC and ConnectiCare, Inc. ("ConnectiCare") (together, "EmblemHealth," the "Company" or "Defendants") hereby allege as follows:

**PRELIMINARY STATEMENT**

1.      EmblemHealth's recent advertising campaign promised: "COVERAGE FOR THE THINGS THAT MATTER MOST. Health Plan. For Now. For Life."

2.      Unfortunately for Plaintiffs, they have learned that EmblemHealth does not count its own retired officers within the "things that matter most," as it defrauded Plaintiffs and similarly situated retired officers of the health benefits they were promised to receive so long as

they met certain eligibility requirements (which all Plaintiffs did) and offered health benefits to active officers.

3. Based on these promises, Plaintiffs and other similarly situated officers or executives ("hereinafter "Executives") remained at EmblemHealth and dedicated their lives to building EmblemHealth into the renowned regional health insurance company that it is today.

4. Through their leadership and vision, serving in the highest levels of the Company's management, including, *inter alia*, Chief Executive Officer, Chief Operating Officer, Chief Actuary, Chief Medical Officer, Chief Information Officer, General Counsel, Executive Vice President, Senior Vice President and Vice President, Plaintiffs developed and instituted many of the policies that were integral to the rise of EmblemHealth in the insurance industry.

5. However, with all Plaintiffs now retired, the new regime at EmblemHealth has seized the opportunity to renege on its promises to provide retiree health benefits to them and similarly situated retired officers, despite continuing health benefits for active officers.

6. Specifically, in June 2016, EmblemHealth notified Plaintiffs and similarly situated retired officers that it would no longer be willing to abide by its promise to provide them with retiree health benefits, effective January 1, 2017.

7. Now, Plaintiffs – who were unlawfully denied their retiree health benefits – have been left to search for expensive health insurance on the open market.

8. What is worse, EmblemHealth's termination of the retiree health benefits appears to have been a calculated and intentional scheme to defraud Plaintiffs and similarly situated retired officers of health benefits in order to save the Company money.

9. This class action seeks monetary damages, declaratory and injunctive relief to enforce Defendants' promises to provide retiree health benefits at the same level as active officers.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court originally had subject matter jurisdiction over this action because this action involves federal questions under the ERISA.

11. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

12. Pursuant to 28 U.S.C. § 1367(a), the Court has retained supplemental jurisdiction over Plaintiffs' related claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## PARTIES

**Plaintiffs and Class Representatives**

13. Plaintiff David Abernethy is a former employee of EmblemHealth and held the title of Senior Vice President.

14. Plaintiff Fred Blickman is former employee of EmblemHealth and held the title of Senior Vice President.

15. Plaintiff Dominic D'Adamo is a former employee of EmblemHealth and held the title of Senior Vice President.

16. Plaintiff Marilyn DeQuatro is a former employee of EmblemHealth and held the title of Senior Vice President.

17. Plaintiff Thomas Dwyer is a former employee of EmblemHealth and held the title of Senior Vice President.

18. Plaintiff Michael Fullwood is a former employee of EmblemHealth and held the titles of Executive Vice President, General Counsel and Chief Financial Officer.

19. Plaintiff Philip Gandolfo is a former employee of EmblemHealth and held the title of Senior Vice President.

20. Plaintiff Michael Herbert is a former employee of ConnectiCare and EmblemHealth and held the title of Executive Vice President.

21. Plaintiff Steven Kessler is a former employee of EmblemHealth and held the titles of Senior Vice President and Chief Underwriter.

22. Plaintiff Dennis Liotta is a former employee of EmblemHealth and held the titles of Vice President and Senior Medical Director.

23. Plaintiff Daniel McGowan is a former employee of EmblemHealth and held the titles of President and Chief Operating Officer.

24. Plaintiff Ronald Platt is a former employee of EmblemHealth and held the titles of Executive Vice President and Chief Medical Officer.

25. Plaintiff Aran Ron is a former employee of EmblemHealth and held the titles of Executive Vice President, Chief Operating Officer and Medical Director.

26. Plaintiff Vincent Scicchitano is a former employee of EmblemHealth and held title of Senior Vice President.[1]

27. Plaintiff John Steber is a former employee of EmblemHealth and held the titles of Executive Vice President and Chief Information Officer.

---

[1] Plaintiffs note that there is a dispute concerning Mr. Scicchitano's right to retiree health benefits and whether his retiree health benefits were pursuant to his separation agreement or some other agreement/plan. As such, discovery on Mr. Scicchitano's contract claims is necessary to determine the source of his retiree health benefits

28. Plaintiff Leslie Strassberg is a former employee of EmblemHealth and held the titles of Senior Vice President and Chief Actuary.

29. Plaintiff Pedro Villalba is a former employee of EmblemHealth held the titles of Senior Vice President and Chief Technology Officer.

30. Plaintiff Anthony Watson is a former employee of EmblemHealth and held the titles of Chief Executive Officer and Chairman of the Board of Directors.

31. Plaintiff Marc Wolfert is a former employee of EmblemHealth and held the titles of Senior Vice President Chief and Chief Laboratory Officer of EmblemHealth, as well as Chief Operating Officer of the Centralized Laboratory at EmblemHealth.

32. At all relevant times, all Plaintiffs met the definition of a "participant," "beneficiary," "employee" and/or "eligible employee" under all applicable statutes.

**Defendants**

33. Defendant EmblemHealth, Inc. is a domestic not-for-profit corporation, with its principal place of business at 55 Water Street, New York, New York 10041.

34. Defendant EmblemHealth Services Company, LLC is a foreign limited liability company authorized to conduct business in New York, with its principal place of business at 55 Water Street, New York, New York 10041.

35. Defendant ConnectiCare, Inc. is a wholly owned subsidiary of EmblemHealth, Inc. and EmblemHealth Services Company, LLC with its principal place of business at 175 Scott Swamp Road, Farmington, Connecticut 06032.

36. At all relevant times, all Defendants met the definitions of an "employer," "administrator" and/or "plan sponsor" under all applicable statutes.

**FACTUAL ALLEGATIONS**

**Plaintiffs' Contributions to EmblemHealth**

37. Plaintiffs began working at EmblemHealth (or, if employed prior to September 2005, at either Group Health Incorporated or Health Insurance Plan of Greater New York, before the two companies merged to form EmblemHealth) and/or ConnectiCare as early as 1980.

38. At EmblemHealth, Plaintiffs held various prestigious positions within the Company, including, but not limited to, Chief Executive Officer, Chief Operating Officer, Chief Actuary, Chief Medical Officer, Chief Information Officer, General Counsel, President, Executive Vice President, Senior Vice President and Vice President.

39. Indeed, it was Plaintiffs who built EmblemHealth into the successful health insurance company it is today, worth approximately $10 billion and with more than 3 million active members.

40. Without the tireless efforts of Plaintiffs, EmblemHealth would not be nearly as successful as it has been over the last 36 years.

**EmblemHealth's Promises to Plaintiffs**

41. Despite their contributions to EmblemHealth's success, however, EmblemHealth recently decided it would not honor its agreements with Plaintiffs to repay them for their hard work through the provision of health benefits to them and their dependents during retirement so long as they remained retired, paid the applicable premiums, enrolled in Medicare when eligible and EmblemHealth continued to offer to active officers health benefits.

    **A.**    **Plaintiffs Who Were Promised Retiree Benefits as Consideration in Separation Agreements**

42. All Plaintiffs, except for Plaintiff Watson, signed Separation Agreements that provided, as consideration, retiree health benefits.

43. Specifically, the Separation Agreements provided, in substantial similar form:

> As consideration for your entering into and complying with the terms of this Agreement, EmblemHealth will provide you with the following severance pay and severance related benefits (collectively hereinafter "Severance Benefits"), which you acknowledge you would not be eligible to receive unless you sign this Agreement and it becomes Effective as provided in Section 12(i) below:

44. As part of the Separation Agreements, Plaintiffs were promised as part of their "Severance Related Benefits:"

> At the conclusion of the Health Benefits Continuation Period, you **will** be able to commence Retiree Health Benefits at the same level as that provided an active officer for you and your eligible dependents, provided that you pay the same amount of premium for such coverage as is paid by an executive then employed by EmblemHealth for the same level of benefits, and provided further that upon becoming Medicare eligible, you enroll in Medicare and elect the appropriate coordination of benefits for continued health coverage. During the Health Benefits Continuation Period, you will be responsible to pay all applicable co-insurance, co-pays, deductibles and other costs as may be otherwise required under the terms of the Health Benefits plans.

(Emphasis added).

45. Plaintiffs' right to continue to receive retiree health benefits had no fixed duration, and thus was clearly intended by all parties to last for the remainder of their lives, provided that they satisfied the conditions set forth in the applicable definition of "Severance Benefit," which all of the Plaintiffs did, and health benefits were offered to active officers.

46. Plaintiffs' right to continued health benefits was only subject "to the terms and conditions of each applicable Health Benefit plan as may exist or change for **similarly situated employees** of EmblemHealth from time to time."  (Emphasis added).

47. In other separation agreements, not applicable to Plaintiffs' claims, EmblemHealth used the phrase "similar situated **retired** officers."  (Emphasis added).

48. EmblemHealth had no right in the Separation Agreements to terminate Plaintiffs' retiree health benefits, except to the extent EmblemHealth terminated health benefits for similarly situated officers actively employed at EmblemHealth.[2]

49. As discussed below, the promise of retiree health benefits in the Separation Agreements is consistent with Plaintiffs' employment agreements that promised that they "shall be entitled" to retiree health benefits once they left EmblemHealth, as well as Plaintiffs' understanding that retiree benefits were not subject to termination unless they failed to meet the eligibility requirements or EmblemHealth terminated health benefits for active officers.

**B.   Other Plaintiffs Who Are Entitled to Retiree Health Benefits**

50. Plaintiff Watson is entitled to retiree health benefits under his agreement with EmblemHealth.

51. Plaintiff Watson signed an employment agreement dated January 1, 2009 that provided:

> If the Executive retires under the Supplemental Executive Retirement Plan for EmblemHealth Services Company, LLC ("SERP"), the Executive **shall be entitled** to receive retiree health coverage at the same level as that provided an active officer for himself and his eligible dependents, provided that he pays the same amount for the premium for such coverage as is paid by an executive then employed by EmblemHealth Services for the same level of medical benefits and provided further that upon becoming Medicare eligible, the Executive enrolls in Medicare and elects the appropriate Medicare coordination of benefits for continued health coverage.

(Emphasis added).

52. Plaintiff Watson retired under the SERP and is entitled to receive retiree health benefits under the terms of his employment agreement.

---

[2]   A separation agreement dated February 23, 2016 noticeably removes retiree health benefits as part of the agreement's consideration.

53. At all relevant times, EmblemHealth described in documents that an active officer covered by a written employment agreement that specifically provides for retiree health benefits based upon retirement under the SERP (or SERP II), that officer would be eligible for retiree health benefits "based upon the terms of that agreement."

54. EmblemHealth had no right to modify Plaintiff Watson's right to retiree health benefits as provided in his employment agreement.

**Plaintiffs All Understood That Health Benefits Would Continue While Retired**

55. Plaintiffs, all of whom were among the most senior Executives of EmblemHealth, understood that their retiree benefits would continue throughout their lives, so long as they continued to pay their premiums, remained retired and health benefits were offered to active officers.

56. Through discovery, hundreds, if not thousands, of other documents and communications during Plaintiffs' employment, including, *inter alia,* various benefits presentations, board minutes, committee minutes and other communications about the nature of the retiree benefits, will reflect that the retiree health benefits promised to them were understood to not be subject to termination or amendment once they retired and were expected to continue so long as they met the eligibility requirements and health insurance was offered to active officers.

57. The employment agreements of almost all Plaintiffs' provided that they "shall be entitled retiree health coverage" at separation without any qualification that such benefits could be terminated unless they failed to meet the eligibility requirements or the Company stopped offering health benefits to active officers.

58. Put simply, EmblemHealth's termination of the retiree health benefits of Plaintiffs and similarly situated retired officers was a knowing and deliberate decision contrary to the understanding and express promises made to Plaintiffs during their employments.

**Plaintiffs Meet All Criteria for Retiree Health Benefits**

59. Plaintiffs have met all of the criteria to continue retiree health benefits (until EmblemHealth unlawfully cancelled their benefits) by: (i) paying the same premium for coverage as was paid by executives then-employed by Defendants for the same level of medical benefits; (ii) not working or consulting full-time while retired; and (iii) enrolling in Medicare when eligible.

**EmblemHealth Defrauded Plaintiffs and Other Similarly Situated Retired Officers of Continued Health Benefits to Save Money**

60. Starting on May 31, 2016, each of Plaintiffs received a letter from EmblemHealth stating, "Starting January 1, 2017, EmblemHealth will no longer provide group retiree major medical coverage. Rather we will provide you with the opportunity to purchase individual insurance coverage . . . on a private health insurance exchange."

61. Blindsided by this news, several Plaintiffs reached out to EmblemHealth to notify the Company that its decision was in breach of its binding agreements with each Plaintiff.

62. In response, the Company relied on unrelated language in Plaintiffs' agreements to claim that EmblemHealth had the right to unilaterally change the terms of the agreements, even though no such right existed.

63. Upon information and belief, EmblemHealth knowingly deceived Plaintiffs and other similarly situated retired officers in terminating their right to continued health benefits as a cost-saving measure, and has engaged in conduct designed to defraud Plaintiffs and similarly situated retired officers.

64. By way of example, EmblemHealth, in a letter to former employees justifying the termination of benefits, omitted relevant language from the Separation Agreements that stated the severance benefits were excluded from coverage under an existing welfare benefit plan.

65. To the extent permitted by law, Plaintiffs and other similarly situated retired officers seek exemplary or punitive damages as a result of EmblemHealth's malicious and fraudulent conduct to deprive them of their right to continued retiree health benefits.

## PUTATIVE CONTRACT CLASS ACTION ALLEGATIONS

66. Plaintiffs' breach of contract and breach of implied covenant of good faith and fair dealing are being prosecuted as a class action pursuant to FRCP 23.  Plaintiffs are representative of the Putative Contract Class of officers who were entitled to retiree health benefits under the terms of their separation agreements and/or retirement agreements.

67. The breaches of contract committed by the Company include, but are not limited to, refusing to honor contractual promises to provide retiree health coverage contained in EmblemHealth's agreements with Executives.

**Class Definition**

68. Plaintiffs seek to maintain claims on their own behalf and on behalf of a class of Executives employed at the Company who were contractually provided with retirement benefits, and whose benefits were terminated by the Company without the required consent of the Executives (the "Putative Contract Class").  The Putative Contract Class is further made up of any such Executives who received the aforementioned post-retirement benefits at any time during the applicable liability or statute of limitations periods, up to and including the date of any judgment in this case.  This Putative Contract Class is so numerous that joinder of all members is impracticable.

69. Plaintiffs and the Putative Contract Class have standing to seek such relief because of the adverse effects that Defendants' breaches of contract have had on them, individually and generally.

70. The breaches of contract described in this Second Amended Complaint now appear to be part of EmblemHealth's normal course of conduct.

**Numerosity and Impracticality of Joinder**

71. The Putative Contract Class is sufficiently numerous to make joinder of all of them impractical. While the exact number of Putative Contract Class members is unknown because such information is in the exclusive control of Defendants, there are a sufficient number of former older Executives who have been victims of identical or similar breaches by EmblemHealth, in violation of the law, such that joinder of all members is impracticable.

72. EmblemHealth's 2016 Form 5500 to the Secretary of Labor evidences that over 600 retired or separated employees were receiving health insurance benefits.

73. Accordingly, although the number of Putative Contract Class members is incapable of precise determination at this time, it is significant and satisfies the numerosity requirement of FRCP 23(a).

**Common Questions of Law and Fact**

74. The claims alleged on behalf of the Putative Contract Class raise questions of law and fact common to the Class. Chief among these questions is: (1) whether Defendants entered into binding contracts with their Executives; (2) whether Defendants breached those binding contracts; and (3) whether the Putative Contract Class members suffered damages as a result of such a breach.

75. Thus, the common question requirement of FRCP 23(a) is satisfied.

**Typicality of Claims and Relief Sought**

76. Plaintiffs are members of the class they seek to represent. Plaintiffs' claims are typical of the claims of the Putative Contract Class in that they all arise from the identical or similar agreements with Defendants, and are based on the legal theory that Defendants breached these agreements in violation of state law. Plaintiffs and the Putative Contract Class members all allege that they each were victims of breaches of contract by Defendants. The relief Plaintiffs seek for Defendants' unlawful breaches is typical of the relief which is sought on behalf of the Putative Contract Class members.

77. The unlawful breaches suffered by Plaintiffs, and the damages resulting therefrom, is sadly typical of Defendants' treatment of the Putative Contract Class members as a whole.

78. Thus, the typicality requirement of FRCP 23(a) is satisfied.

**Adequacy of Representation**

79. The interests of the Plaintiffs are co-extensive with those of the Putative Contract Class they seek to represent in the instant case. Plaintiffs are willing and able to represent the proposed Putative Contract Class fairly and vigorously as they pursue their similar individual claims. Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

80. The combined interests, experience and resources of the Plaintiffs and their counsel to competently litigate the individual and Putative Contract Class claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

**Requirements of FRCP 23(b)(1)**

81.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Specifically, all evidence of whether Defendants breached the identical or nearly identical agreements with the Putative Contract Class would be exchanged and litigated repeatedly.  Accordingly, certification of the proposed Putative Contract Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Putative Contract Class and Defendants.

82.     By filing this Second Amended Class and Collective Action Complaint, Plaintiffs are preserving the rights of the Putative Contract Class with respect to the statute of limitations on their claims.  Therefore, not certifying a class would substantially impair and/or impede the other members' ability to protect their interests.

**Requirements of FRCP 23(b)(2)**

83.     Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the Putative Contract Class, by breaching identical or nearly identical agreements with each of the Putative Contract Class members.  These acts are not sporadic or isolated, and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the Putative Contract Class as a whole.

84.     Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence and breach of explicit separation and/or retirement agreements with the Putative Contract Class.

85. Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the Putative Contract Class's entitlement to monetary and non-monetary remedies for individual losses caused by, and exemplary purposes necessitated by, such breaches of contract.

86. Accordingly, injunctive and declaratory relief is among the predominant forms of relief sought in this case.

**Requirements of FRCP 23(b)(3)**

87. The common issues of fact and law affecting Plaintiffs' claims and those of the Putative Contract Class, including, but not limited to, the common issues identified in the paragraphs above, predominate over issues affecting only individual claims.

88. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the Putative Contract Class.

89. The cost of proving Defendants' pattern and practice of breaching their separation and/or retirement agreements with Executives makes it impractical for the members of the Putative Contract Class to pursue their claims individually.

90. The class action will not be difficult to manage for reasons including, but not limited to, the discrete organizational nature of the Putative Contract Class (they must have worked for Defendants as Executives, meaning in the role of Vice President or a more senior position), as well as the common questions of law and fact described above.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**
**(*Individual and Class Claims*)**

91. Plaintiffs and the members of the Putative Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

92. EmblemHealth entered into binding and enforceable contracts with Plaintiffs and the members of the Putative Contract Class pursuant to which EmblemHealth would provide retiree health benefits.

93. EmblemHealth breached these contracts by withdrawing its retiree health coverage from Plaintiffs and the members of the Putative Contract Class.

94. EmblemHealth's breaches of contract have caused Plaintiffs and the members of the Putative Contract Class to suffer monetary and/or economic harm, for which they are entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (*Individual and Class Claims*)

95. Plaintiffs and the members of the Putative Contract Class hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as if fully set forth herein.

96. EmblemHealth entered into binding and enforceable contracts with Plaintiffs and the members of the Putative Contract Class pursuant to which EmblemHealth would provide retiree health benefits.

97. By withdrawing its retiree health coverage from Plaintiffs and the members of the Putative Contract Class, EmblemHealth acted in a manner that, even if not expressly forbidden by any contractual provision, deprived Plaintiffs of the right to receive benefits under these contracts.

98. EmblemHealth's implied promise to act in good faith and deal fairly with Plaintiffs and the members of the Putative Contract Class is not contrary to any express provision in the contracts.

99. EmblemHealth's breaches have caused Plaintiffs and the members of the Putative Contract Class to suffer monetary and/or economic harm, for which they are entitled to an award of monetary damages and other relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the Contract Classes pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Putative Contract Class, including all last known addresses, telephone numbers and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D. Designate Plaintiffs as representatives of the Putative Contract Class, and their counsel of record as class counsel;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs and members of the Putative Contract Class for all monetary and/or economic damages, including, but not limited to, loss of retiree health coverage for them and their eligible dependents;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs and members of the Putative Contract Class in an amount to be determined

at trial, plus prejudgment interest;

  G. An award of punitive damages in an amount to be determined at trial;

  H. An award of costs that Plaintiffs and members of the Putative Contract Class have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' and the Putative Contract Class members' reasonable attorneys' fees and costs to the fullest extent permitted by law or contract; and

  I. Such other and further equitable relief as the Court may deem just and proper.

Dated: June 8, 2020
   New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
  Douglas H. Wigdor
  Parisis G. Filippatos
  Renan F. Varghese
  Bryan L. Arbeit

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
pfilippatos@wigdorlaw.com
rvarghese@wigdorlaw.com
barbeit@wigdorlaw.com

*Attorneys for Plaintiffs and the Putative Contract Class*